**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patrick Hough HARRINGTON,**
**Defendant–Appellant.**

**Nos. 95–30362, 95–30413.**

United States Court of Appeals,
Fifth Circuit.

March 19, 1996.

As Modified on Rehearing April 17, 1996.

---

Josette Louise Cassiere, Assistant U.S. Attorney, Office of the United States Attorney, Robert Watts Gillespie, Jr., Shreveport, LA, for plaintiff-appellee in both cases.

J. Michael Small, Phyllis Elaine Mann, Alexandria, LA, Richard George Crane, for defendant-appellant.

Rebecca L. Hudsmith, Office of the Federal Public Defender, Shreveport, LA, for Harrington.

Before JONES, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal involves eight challenges to the district court's application of the sentencing guidelines. We reject all claims lodged against the district court's application of the guidelines except for the challenge to the upward departure. Finding the departure impermissible, we vacate and remand with instructions.

## I. FACTS AND PROCEDURAL HISTORY

By way of indictment, a grand jury charged that Patrick Hough Harrington (Harrington), from November 10, 1991, to May 4, 1994, along with Mario Alberto Guerra, conspired to induce the illegal entry of aliens into the United States and to transport, harbor, and conceal the aliens in violation of 8 U.S.C. § 1324(a)(1) and 18 U.S.C. § 371 (count one). That indictment also charged Harrington with six substantive offenses of smuggling illegal aliens in violation of 8 U.S.C. § 1324(a)(1) and 18 U.S.C. § 371 (counts two through seven). On September 14, 1994, pursuant to a written plea agreement, Harrington pleaded guilty to counts one, three, and six.

While awaiting sentencing on the above counts, Harrington arranged for Damon Paul Cheatwood to travel to Denver, Colorado, and contact Delia Hernandez–Chairez and Dora Molina–Espino, who were named as the illegal aliens in count six of the above referenced indictment. Harrington gave Cheatwood money and affidavits, instructing Cheatwood to obtain the signatures of the two women on the affidavits in exchange for $200.

The affidavits were an attempt to exculpate Harrington regarding the alien smuggling charges. Specifically, the affidavits had been translated into Spanish and contained several false statements: that Guerra had transported the women in to Louisiana; that Harrington, although present, did not know that they were illegal aliens; that the women had been promised U.S. citizenship by a border patrol agent in exchange for making false statements against Harrington; and that to obtain their false statements to the United States Attorney, an Immigration and Naturalization Service agent told them that Harrington had hired someone to kill them.

Hernandez–Chairez refused to sign the affidavit and reported the attempted bribery to the authorities. Thereafter, the FBI contacted Cheatwood, who agreed to cooperate and allowed his telephone conversations with Harrington to be recorded. Cheatwood, in the taped conversations, informed Harrington that the women would not accept the $200, to which Harrington replied that Cheatwood was authorized to pay them $400 each. Harrington also expressed concern regarding whether the women would be returning to Mexico so that they would not be located.

As a result of these activities, on November 16, 1994, a grand jury charged Harrington with conspiracy to obstruct justice in count one and a substantive count of obstruction of justice in count two, in violation of 18 U.S.C. §§ 371, 1503, and 2. On December 29, 1994, pursuant to a written plea agreement, Harrington pleaded guilty to both counts.

Meanwhile, a presentence investigation report (PSR) had been prepared in connection with the alien smuggling convictions. The total offense level was 17. The district court did not rule on Harrington's objections to that PSR because, at the sentencing hearing, defense counsel informed the court that there was no need to rule on the objections in light of the fact that the offenses were grouped and the obstruction of justice offense level was the higher of the two. The district court sentenced Harrington to 30 months imprisonment on each of the three counts of the alien smuggling charges, to run concurrently.

Harrington's sentence for the obstruction of justice was calculated as follows. The base offense level was 12. U.S.S.G. § 2J1.2(a). The district court imposed a three-level increase in the offense level because the offense resulted in substantial interference with the administration of justice. § 2J1.2(b)(2). Because Harrington committed the obstruction of justice offenses while on release, his offense level was increased by three. § 2J1.7; 18 U.S.C. § 3147. Finding that Harrington was the leader or organizer of the conspiracy, the district court also added two offense levels. § 3B1.1(c). Harrington's adjusted offense level was 20, and his criminal history category was I, resulting in a guideline range of 33–41 months.

After making these determinations regarding the obstruction of justice convictions at the sentencing hearing, the district court departed upward from the guidelines under § 5K2.0, finding that because Harrington was an officer of the court, his actions had "perverted the system." The court then sentenced Harrington to a term of 54 months on count 1, and 54 months on count 2, to run concurrently. The district court ordered the 30–month sentence for the illegal alien offenses to run concurrently with the obstruction of justice offenses. Further, because the obstruction of justice offenses were committed while Harrington was on release, the district court imposed two additional three-month terms, each to run consecutively to the sentence in count one of the obstruction indictment and each other. *See* 18 U.S.C. § 3147. The total period of imprisonment imposed was 60 months. Harrington now appeals his sentences.

## II. ANALYSIS

### A. STANDARD OF REVIEW

■ Harrington raises eight challenges to the district court's application of the sentencing guidelines. We review the district court's application of the sentencing guidelines *de novo*, while reviewing findings of fact under a clearly erroneous standard. *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993). Due deference is given to the district court's application of the guidelines to the facts. *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir.1989); *see also* 18 U.S.C. § 3742(e).

### B. SUBSTANTIAL INTERFERENCE WITH ADMINISTRATION OF JUSTICE

■ Harrington contends that the district court erred in imposing a three-level increase to his base offense level pursuant to U.S.S.G. § 2J1.2. Section 2J1.2(b)(2) provides that "[i]f the offense resulted in substantial interference with the administration of justice, increase by 3 levels." The commentary to that guideline defines "substantial interference with the administration of justice" to include, among other things, "the unnecessary expenditure of substantial governmental or court resources." § 2J1.2, comment. (n.1).

At sentencing, the district court made a finding that there had been a "substantial expenditure of resources." Harrington does not contest the finding that substantial resources actually were expended. Instead, he argues that the increase under § 2J1.2(b)(2) only applies when substantial resources are expended in relation to investigating or prosecuting the initial offense (here, the alien charges), rather than in relation to the offense of obstruction of justice.

Harrington does not cite to any authority for the proposition that the substantial resources must be expended in connection with the initial offense rather than the obstruction offense.[1] As a practical matter, it would

1. In the context of another guideline that applies to obstructing or impeding the administration of justice, § 3C1.1, this Court rejected a similar contention. *United States v. Kirk*, 70 F.3d 791, 797–98 (5th Cir.1995). Section 3C1.1 provides a two-level increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the *instant* offense." (emphasis added). In *Kirk*,

the defendant argued that the obstructive conduct for which he received the two-level increase was not related to the "instant offense" as required under § 3C1.1. The defendant had instructed another person not to cooperate with the authorities. However, that person apparently had no knowledge specifically relating to the activities underlying the offense to which Kirk had pleaded guilty. Thus, the defendant argued,

seem that in most cases the investigation of the underlying offense and of the obstruction charge would be almost inextricably related. In any event, we need not determine whether the substantial resources must be expended in direct connection with the initial offense because there was a direct connection between the resources expended and the successful prosecution of the alien smuggling charges.

Specifically, it is Harrington's contention that because he pleaded guilty to the alien charges prior to the commencement of the investigation of his obstructive conduct, all the resources expended after he pleaded guilty could not be in relation to the alien charges. This argument overlooks the fact that Harrington had not been sentenced on the alien charges at the time he was attempting to obstruct justice. Harrington orchestrated the activities underlying the obstruction of justice count in an attempt to be allowed to withdraw his plea of guilty to the alien smuggling charges. More to the point, if Harrington's bribe had been accepted, Harrington apparently would have offered the false affidavits in support of a motion to withdraw the guilty plea. Clearly, the resources that the FBI agents expended during their surveillance of Harrington while he was awaiting sentencing were directly related to ensuring that the guilty pleas to the alien smuggling charges would not be withdrawn or vitiated. As such, Harrington has not shown that the district court erred in assessing the three-level increase under § 2J1.2(b)(2).[2]

## C. UPWARD DEPARTURE

Harrington argues that the district court erred in departing upward from the guideline range based solely on his status as an attorney. Finding merit in this contention, we vacate and remand.

■ District courts may impose sentences outside the guideline range in cases that present "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." § 5K2.0, p.s.; 18 U.S.C. § 3553(b). The district court must, however, articulate on the record acceptable reasons for departure, and such departure must be reasonable. *United States v. Chappell*, 6 F.3d 1095, 1102 (5th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1232, 127 L.Ed.2d 576 (1994). Harrington challenges the basis for the departure but not the extent of departure.

At the sentencing hearing, the district court made the following findings to support the upward departure:

> This Court finds grounds for an upward departure from the sentencing guidelines in accordance with [§ 5K2.0] You were an officer of the court. Your actions perverted the system. I take that to be an aggravating circumstance of a kind not adequately taken into consideration by the sentencing commission.

■ Harrington correctly argues that a defendant's socioeconomic status or position is not a basis for departure from the guidelines. *United States v. Hatchett*, 923 F.2d 369, 374 (5th Cir.1991); *see United States v. Stout*, 32 F.3d 901, 903–04 (5th Cir.1994) (concluding that the defendant's position as a

---

his conduct did not relate to the "instant offense" pursuant to § 3C1.1.

Following the Sixth Circuit, this Court rejected the defendant's argument, opining that "[a]lthough this Guideline clearly contemplates a relationship between the information concealed and the offense conduct, it does not require that it be related directly to a particular offense to which the defendant pleads guilty." There is no "instant offense" requirement in the guideline applied in Harrington's case, rendering Harrington's argument less persuasive than Kirk's rejected argument.

2. Harrington further contends that allowing the district court to rely on the routine costs such as fees for appointed counsel and the court reporter would make the increase under § 2J1.2(b)(2) applicable to *every* obstruction of justice case. Whatever the merits of that contention may be, in Harrington's case, there were substantial resources expended over and above the routine costs of prosecuting the obstruction offense. For example, the federal agents spent hundreds of hours of law enforcement personnel time investigating and conducting surveillance of Harrington.

judge was an unacceptable reason for departure).

In response, the Government asserts that the departure was not based solely on the fact that Harrington was an attorney and that Harrington ignores the court's finding that his "actions perverted the system." Contrary to Harrington's contention, the Government contends, the district court's reasoning would not permit an upward departure for any offense committed by an attorney. The instant case does not involve just any violation of the law, but an obstruction of justice offense, which has an obvious impact on the administration of justice.

 To analyze Harrington's claim, we begin by recognizing Congress's intent in creating the sentencing guidelines. Congress, by adopting the sentencing guidelines has abandoned the model of penology in which " 'the punishment should fit the offender and not merely the crime.' " *United States v. Burch*, 873 F.2d 765, 768 (5th Cir. 1989) (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). Under the Sentencing Reform Act, the federal courts must sentence the defendant based on the offense rather than the offender. *Id.* at 768–69. Although the guidelines do allow certain characteristics of the offender, such as a defendant's criminal history, to be taken into consideration to calculate a sentence, these characteristics must be directly relevant to the offense committed. *Id.* at 769.

 As Harrington points out, merely having the position of public or private trust is not sufficient to warrant an increase under § 3B1.3.[3] "For this enhancement [§ 3B1.3] to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." § 3B1.3, comment. (n.1). By way of example, the commentary also provides that § 3B1.3 "would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian...." *Id.*

The Government responds that the district court did not apply § 3B1.3, and therefore, neither the guideline nor its commentary are applicable. Although § 3B1.3 was not applied (instead the district court upwardly departed under § 5K2.0), the existence of § 3B1.3 indicates that the Sentencing Commission did consider circumstances involving a criminal defendant such as an attorney and decided that the attorney must somehow use his position to significantly facilitate the offense in order for an increase in sentence to be warranted.

In *United States v. Brunson*, 915 F.2d 942, 943 (5th Cir.1990), the defendant was sentenced pursuant to the guideline involving commercial bribery. The district court determined that the guideline did not take into consideration Brunson's misuse of his position as an assistant district attorney, and thus, the court upwardly departed from the guideline range. On appeal, Brunson argued that the district court erred because it did not apply § 3B1.3, the guideline concerning an abuse of position. This Court expressly stated that the argument had merit but held that Brunson had not shown plain error. *Id.* at 944.[4]

---

3. Section 3B1.3 provides, in pertinent part, that: "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels."

4. The parties acknowledge our decisions in *United States v. Pridgen*, 898 F.2d 1003, 1004–05 (5th Cir.1990), and *United States v. Wade*, 931 F.2d 300 (5th Cir.), *cert. denied*, 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991). In *Pridgen*, the fact that the appellant was a former law enforcement officer and evidently conscious of the magnitude of his crime was one of several factors that supported the sentencing departure. 898 F.2d at 1004–05. Subsequently, in *Wade*, this Court upheld an upward departure that was

based, in part, on the defendant's exploitation of his position as sheriff to further his drug conspiracy. We also acknowledged that *"Pridgen* does not give approval for an upward departure each time a law enforcement officer is sentenced, it does stand for the proposition that, in certain cases, law enforcement experience is an acceptable reason to depart upwards." 931 F.2d at 307. We do not find these cases helpful to the analysis in the instant case. In *Pridgen* and *Wade*, the district court articulated specific reasons for its departure and did not base the departure solely on the defendant's status. Additionally, in *Wade*, the defendant committed the crime while in office; however, the defendant apparently did not argue that the district court should

We perceive no meaningful distinction between the district court's reason for departing upward (Harrington's actions as an officer of the court) and an increase contemplated under § 3B1.3 for abuse of position of trust. We therefore hold that the district court initially should have considered whether § 3B1.3 applied to Harrington's conduct. In other words, the court should have determined whether Harrington abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense. We note that the district court made a finding that Harrington was a leader pursuant to § 3B1.1(c), thereby precluding the district court from employing the special skills portion of § 3B1.3. *See* § 3B1.3. Thus, any adjustment pursuant to § 3B1.3 based on an abuse of position of trust must be divorced from the special skills portion of that provision. Moreover, it may be that the circumstances or conduct of the defendant relied upon by the Government to sustain the district court's upward departure support an upward departure based on the adequacy of Harrington's criminal history category. *See* § 4A1.3. The district court is free to explore this upon resentencing the defendant. We further hold that the district court's finding that Harrington "perverted the system" is inadequate to support the upward departure under § 5K2.0. Accordingly, we vacate the sentences for the obstruction of justice offenses.

## D. APPLICATION OF ENHANCEMENT UNDER U.S.S.G. § 2J1.7

Harrington committed the obstruction of justice offenses while on release, and 18 U.S.C. § 3147(1) provides that a person convicted of an offense committed while on release shall be sentenced to an additional "term of imprisonment of not more than ten years if the offense is a felony." Additionally, U.S.S.G. § 2J1.7 provides that if 18 U.S.C. § 3147 applies, three levels must be added to the defendant's offense level. The court apportioned the sentences as follows: 54 months on each obstruction count, and pursuant to 18 U.S.C. § 3147, two additional three-month terms, each to run consecutively to the sentence in count one of the obstruction indictment and each other.

Relying on the following language in the commentary, Harrington argues that the district court erred in sentencing him to more than 54 months imprisonment because the district court intended that to be the "total punishment." § 2J1.7, comment. (n.2). "The court will have to ensure that the 'total punishment' (*i.e.*, the sentence for the offense committed while on release plus the sentence enhancement under 18 U.S.C. § 3147) is *in accord with the guideline range* for the offense committed while on release, as adjusted by the enhancement in this section." *Id.* (emphasis added).[5] However, because district court upwardly departed from the guideline range, that language requiring the sentence enhancement to be in accordance with the guideline range is inapplicable to Harrington's situation. Moreover, at the sentencing hearing, the judge specifically stated that it was his intention that Harrington be sentenced to a term of 60 months imprisonment. As the Government argues, the court arrived at the sentence of 54 months by backing into it from the intended 60–month total. Harrington has not shown that the district court improperly enhanced his sentence under § 3147.[6]

## E. DOWNWARD DEPARTURE

Harrington acknowledges the policy statement in the guidelines that provides that family ties and responsibilities are not ordi-

---

have considered § 3B1.3 before determining that it should depart.

**5.** The commentary also provides an example of how to comply with the foregoing note. "For example, if the applicable adjusted guideline range is 30–37 months and the court determines 'total punishment' of 36 months is appropriate, a sentence of 30 months for the underlying offense plus 6 months under 18 U.S.C. § 3147 would satisfy this requirement."

**6.** To the extent Harrington is arguing that the application of this guideline constituted double counting, we are not persuaded. Double counting is not prohibited unless the guideline in question forbids it. *See United States v. Box*, 50 F.3d 345, 359 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 714, 133 L.Ed.2d 668 (1995).

narily relevant to determine whether a sentence should be outside the guideline range. § 5H1.6, p.s. Nevertheless, Harrington argues that, because his family circumstances are extraordinary, the district court should have taken them into consideration to determine his sentence, either by departing downward or sentencing Harrington at the low end of the sentencing range.

■ Harrington "'has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts ... parental relationships.'" *United States v. Brown,* 29 F.3d 953, 960–61 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 587, 130 L.Ed.2d 501 (1994) (quoting *United States v. Daly,* 883 F.2d 313, 319 (4th Cir. 1989), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990)). Accordingly, we find nothing extraordinary regarding Harrington's family responsibilities that would warrant a reduction in his sentence.

■ Harrington also argues that the district court erred in refusing to depart downward based on his diminished capacity. § 5K2.13, p.s. There is no indication that the district court was under the impression that it could not depart downward based on diminished capacity, and .thus, there is no basis upon which Harrington may appeal the district court's refusal to depart. *United States v. Willey,* 57 F.3d 1374 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 675, 133 L.Ed.2d 524 (1995). ·

### F. SMUGGLING ILLEGAL ALIEN OFFENSES

Finally, Harrington argues: (1) that there was insufficient evidence to show that he smuggled six or more aliens under § 2L1.1(b)(2)(A); (2) that because he committed the offenses "other than for profit" pursuant to § 2L1.1(b)(1), the district court should have granted him a decrease in offense level; and (3) that the district court erred in finding that the smuggling offense was "otherwise extensive" pursuant to § 3B1.1(a).

At the sentencing hearing, defense counsel informed the court that there was no need to rule on these objections because the obstruction of justice offense level was higher than the illegal alien smuggling offense level. Consequently, the Government argues that the issues are barred by the doctrine of invited error, thus limiting our review to plain error. *United States v. Puig–Infante,* 19 F.3d 929, 941 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994). We agree.

With respect to the three claims at issue, we have considered briefs and oral arguments of counsel and the pertinent parts of the record, and conclude there is no plain error. *See United States v. Calverley,* 37 F.3d 160, 165 (5th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).

In as much as we today revise Part II C of our previous opinion, Harrington's sentences for the obstruction of justice offenses are VACATED and REMANDED for resentencing. Harrington's sentences for the illegal alien smuggling offenses are AFFIRMED. In all other respects the Government's motion for rehearing is denied, the mandate shall issue, and no other motions for rehearing will be entertained.