**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Grayson TACKETT; Linda Tackett,**
**Defendants–Appellants.**

**No. 98–5678.**

United States Court of Appeals,
Sixth Circuit.

Argued: May 17, 1999

Decided and Filed: Oct. 13, 1999

Samuel Manley (argued and briefed), Law Office of Samuel Manley, Louisville, Kentucky, for Defendants–Appellants.

Terry M. Cushing, Assistant U.S. Attorney (argued and briefed), John L. Caudill, Assistant U.S. Attorney (briefed), Louisville, Kentucky, for Plaintiff–Appellee.

Before: NORRIS and COLE, Circuit

Judges; MARBLEY, District Judge.*

## OPINION

MARBLEY, District Judge.

Defendants–Appellants Grayson and Linda Tackett ("defendants") were convicted of corruptly endeavoring to influence, obstruct, and impede the due administration of justice by asking a federally-licensed firearms dealer to testify falsely under oath before a grand jury. The defendants now challenge the district court's three-level enhancement of their sentence for substantial interference with the administration of justice pursuant to United States Sentencing Guideline § 2J1.2(b)(2).

## I.

On December 6, 1991, a fire destroyed the Barren River Baptist Church in Bowling Green, Kentucky. In June of 1992, Brian Tackett, son of Linda and Grayson Tackett, was charged with destroying a building by means of fire, in violation of 18 U.S.C. § 844(I), conspiracy to destroy a building by means of fire, in violation of 18 U.S.C. § 371, and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).[1]

The firearm Brian Tackett was charged with carrying during the church arson was a .45 caliber colt combat commander pistol which he had purchased in March or April of 1991 from Steve Kirby. Kirby was a federally licensed firearms dealer who owned a gun shop called Steve's Guns. Kirby sold the pistol to Brian Tackett for $500 at Kirby's house. At that time, Kirby failed to fill out the requisite firearms transaction record, called a "form 4473," which was to reflect the correct purchaser and date of purchase of the firearm.

In September or October of 1992, following the indictment of Brian Tackett for

arson but before his trial, Grayson Tackett entered Steve Kirby's gun shop to "settle up" for the gun that Brian had purchased eighteen months earlier. Kirby remembered that Brian had paid for the gun in full during the exchange at Kirby's house, but that a form 4473 had not been completed. Despite this knowledge, Kirby agreed to record Grayson Tackett's name as the gun purchaser on a pre-dated form. When Kirby expressed his belief that the gun had been purchased in the first quarter of 1991, Grayson directed him to "put down 12–16–91, that's a good date." Kirby did as Grayson suggested, not realizing the significance of the December 16th date. Barren River Baptist Church had burned down on December 6, 1991.

Several months later, Linda Tackett entered Kirby's gun shop and requested to see records of all gun purchases made by Grayson. She stated that she wanted to give a copy of the form 4473 that described Grayson's purchase of the colt .45 to Bob Harrison, Brian Tackett's lawyer in his arson trial. Linda warned Kirby that he could expect someone from the Alcohol, Tobacco, and Firearms Agency ("ATF") to come by and check his records.

Linda took a copy of the form 4473 to the office of Bob Harrison in February, 1993. Harrison realized that if the document were correct, it indicated that Brian Tackett did not have possession of the colt .45 pistol at the time of the church arson. Accordingly, on February 16, 1993, one month before trial, Harrison filed a motion to dismiss count four of the indictment, which charged Brian Tackett with carrying a firearm in relation to a crime of violence.

ATF agent Ray Wilt received the motion to dismiss from the U.S. Attorney's Office sometime in mid-February, 1993. At that time, Wilt began an investigation

---

* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1. Brian Tackett, Linda Tackett, and two others were also charged with conspiracy to destroy by fire a building affecting interstate commerce, in violation of 18 U.S.C. §§ 371 & 844(I). Linda Tackett was acquitted and all others were convicted of this offense.

to determine the accuracy of the form 4473. Wilt went to Kirby's gun shop on February 22, 1993, and questioned Kirby about the document. Kirby attested that the form was correct as to both the purchaser and the date of purchase.

On March 3, 1993, Agent Wilt returned to Steve's Guns to question Kirby further regarding the form 4473. This time, Kirby admitted that Brian Tackett had bought the weapon during the first quarter of 1991, and conceded that the form may have been altered as to the date of purchase, but maintained that Kirby himself had not altered it.

On March 4, 1993, Kirby went to the ATF office in Bowling Green and informed Agent Wilt of Grayson Tackett's request and Kirby's agreement to falsify the form 4473. Later that day, Agent Wilt served Kirby with a subpoena to testify before a federal grand jury on March 8, 1993. A. Duane Schwarz, the Criminal Division Chief of the U.S. Attorney's Office for the Western District of Kentucky, arranged to have the grand jury impaneled on March 8, 1993, solely to investigate the accuracy of the form 4473.

In the meantime, Kirby had decided to cooperate with the ATF to verify his account of when and how the form had been executed. Kirby agreed to make contact with Grayson Tackett, discuss the form 4473 with him, and record the conversation with a hidden recording device. Between March 4, 1993 and March 7, 1993, Kirby had five separate contacts with either or both Linda and Grayson Tackett, each of which were recorded and later transcribed. During these conversations, the Tacketts not only admitted to having asked Kirby to falsify the form 4473, they asked Kirby to perjure himself before the grand jury and, if necessary, at Brian's trial.

On March 8, 1993 the federal grand jury met in Louisville, Kentucky and heard evidence regarding the circumstances behind the execution of the form 4473. Kirby did not to appear or testify at the proceeding. The grand jury returned an indictment against Linda and Grayson Tackett the same day.

On April 2, 1993, Grayson Tackett testified at Brian Tackett's arson trial and described the falsification of the form 4473. Grayson admitted that he had chosen the December 16th date because, "I was wanting to help Brian, and naturally I am going to say it was the middle of December because that would help Brian out even more with what the charges were against him."

On May 4, 1995, Linda and Grayson Tackett were convicted of corruptly endeavoring to influence, obstruct, and impede the due administration of justice, pursuant to 18 U.S.C. §§ 2 and 1503. Grayson was also convicted of knowingly making a false statement with respect to information required by 18 U.S.C. § 44 to be kept in the records of a federally-licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A). At sentencing, the district court enhanced the Tacketts' basic offense level by three points pursuant to United States Sentencing Guideline § 2J1.2(b)(2) for "substantial interference with the administration of justice."

The Tacketts appealed the district court's initial enhancement in an earlier appeal. At that point, we affirmed the Tacketts' convictions but remanded for re-sentencing on the grounds that the district court had failed to make explicit findings of fact regarding whether the Tacketts had substantially interfered with the administration of justice. *See United States v. Tackett*, 113 F.3d 603, 613–14 (6th Cir. 1997).

On April 17, 1998, at re-sentencing, the district court heard the testimony of Agent Wilt pertaining to the necessity of the March 8, 1993 special grand jury. Agent Wilt also testified that several agents had been required to meet and work over the weekend prior to the grand jury to set up and execute the electronic surveillance of Steve Kirby. At the conclusion of the re-sentencing testimony and the arguments

offered by both the prosecution and defense, the district court made the following findings:

> The base offense level should be determined by using U.S. Sentencing Guideline Section 2J1.2(b)(2). Because if the Court finds that the Defendants substantially interfered with the administration of justice by causing delay in the trial of Brian Tackett, docket No. 1:92–CR–15–2–H in the United States District Court of Kentucky in Bowling Green.
>
> I've been necessitating further investigation by the government, including the subpoena—the assembling of a grand jury in Louisville, Kentucky, and the requirement that agents of the United States Prosecutor's Office and the administrative agents who travel to and from Bowling Green, to Louisville, Kentucky, thereby causing unnecessary expense to the Court and to the Government.
>
> And therefore the three-level enhancement for obstruction of justice originally determined to be appropriate in the presentence report shall be applied, and the Defendants' objections are therefore overruled.

After a reminder by the prosecutor that there was no proof that Brian Tackett's trial had been delayed in any way, the court stated:

> I alter that and my findings, so it is clear, I find that because of this offense, officers of the ATF and the United States Attorney's Office were required to do substantial investigation to use electronic devices to substantiate their findings to travel to and from Louisville for the purpose of carrying out this investigation.

Thereafter, the court sentenced Linda and Grayson Tackett to twenty-one and eighteen months in prison, respectively. Each of the sentences was computed by applying a three-level increase to the base offense level for causing substantial interference with the administration of justice

pursuant to U.S.S.G. § 2J1.2(b)(2). The defendants now appeal the district court's upward departure.

## II.

■ We review *de novo* a district court's application of the Sentencing Guidelines when the application involves either a question of law or a mixed question of law and fact. *See United States v. Sanders*, 162 F.3d 396, 399 (6th Cir.1998). We review for clear error a district court's findings of fact in connection with sentencing. *See United States v. Hayes*, 135 F.3d 435, 437 (6th Cir.1998).

The statute under which Grayson and Linda Tackett were convicted makes unlawful any attempt to "corruptly ... influence[ ], obstruct[ ], or impede[ ], the due administration of justice." 18 U.S.C. § 1503. U.S. Sentencing Guideline § 2J1.2 sets the base offense level for violation of § 1503 at twelve and provides a three-level increase "[i]f the offense resulted in substantial interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2). The application note to § 2J1.2 explains that "substantial interference with the administration of justice" includes "the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2, Application Note 1.

■ In this appeal, the defendants' sole contention is that the district court incorrectly based its enhancement exclusively upon expenses associated with the underlying obstruction of justice offense, in essence "double-counting" the effects of their deception, punishing them twice for "interfering with the due administration of justice." The defendants are simply wrong. While the issue of "double-counting" would be one of first impression in this Circuit, the facts in this case do not implicate the question of whether the obstruction of justice can be in the defendants' own obstruction case. Rather, the defendants' conduct generated governmental expense not only

in connection with their own trial, but in that of their son's.

It is true, as the defendants note, that the expenditures recited by the district court at sentencing were necessary for the prosecution of the defendants. Those expenditures, however, were also necessary for the prosecution of Brian Tackett. Thus, defendants are not being punished twice for the same conduct. They are being punished once for their conduct, with a three-level enhancement for the extraordinary consequences of that conduct.

The Fifth Circuit was confronted with an analogous circumstance in *United States v. Harrington*, 82 F.3d 83 (5th Cir. 1996). In *Harrington*, the defendant pled guilty to conspiring to induce the illegal entry of aliens into the United States. While awaiting sentencing, the defendant attempted to bribe two of the aliens to testify that he had not known that they were aliens when he brought them into the country. When this scheme was discovered, a grand jury charged the defendant with obstruction of justice, to which he pled guilty. The sentencing court enhanced the defendant's offense level on the obstruction of justice charge for having caused the government substantial unnecessary expense pursuant to § 2J1.2(b)(2). The defendant appealed, contending that in order for § 2J1.2(b)(2) to apply, the government must have expended substantial resources in connection with the initial offense of alien smuggling rather than the obstruction offense. The Fifth Circuit rejected this argument, reasoning:

> As a practical matter, if would seem that in most cases the investigation of the underlying offense and of the obstruction charge would be almost inextricably related. In any event, we need not determine whether the substantial resources must be expended in direct connection with the initial offense because there was a direct connection between the resources of expended and the successful prosecution of the alien smuggling charges.
>
> . . . .
>
> Harrington orchestrated the activities underlying the obstruction of justice count in an attempt to be allowed to withdraw his plea of guilty to the alien smuggling charges.... Clearly, the resources that the FBI agents expended during their surveillance of Harrington while he was awaiting sentencing were directly related to ensuring that the guilty pleas to the alien smuggling charges would not be withdrawn or vitiated.

*Id.* at 86–87.

The Court concluded that although the government's expenditures aided in the prosecution of the defendant for obstruction, the expenditures were also necessary to the government's prosecution of the defendant for smuggling aliens. Accordingly, the Fifth Circuit held that the expenditures properly supported the three-level increase of § 2J1.2(b)(2). The reasoning applied in *Harrington* is even more compelling in this case. In *Harrington*, the expenses related to a different charge brought against the same defendant; here, the expenses not only relate to different charges, but to entirely different *defendants*.

The defendants rely on *United States v. Sinclair*, 109 F.3d 1527, 1539 (10th Cir. 1997), for the proposition that a sentence for obstruction of justice may not be enhanced based on expenses associated with the underlying obstruction. The government argues that the decision in *Sinclair* supports its position rather than the defendants'. The government is correct. The defendant in *Sinclair* was convicted of knowingly making false declarations before the court and conspiracy to offer false testimony.[2] *Sinclair's* conviction arose from his perjury at the trial of his acquain-

---

**2.** Although this offense is different from that of obstruction of justice and therefore implicates a different sentencing guideline, the operative language of the guideline is *in pari materia* with the language of § 2J1.2(b)(2).

tances on drug and firearm charges and from his inducement of two other witnesses to perjure themselves in that trial. Upon reviewing the district court's enhancement of Sinclair's sentence for substantial interference with the due administration of justice, the Tenth Circuit held "expenses associated with the underlying perjury offense should not form the basis of an upward adjustment." *Sinclair*, 109 F.3d at 1539. Thus, the *Sinclair* Court overruled the district court's reasoning, in part, and held that "contrary to the reasoning of the presentence report, the government's preparation for Mr. Sinclair's perjury trial and the court's expenditure of time and resources in trying him on that offense cannot be used to support the ... upward adjustment in the offense level." *Id.*

The Tenth Circuit, however, ultimately upheld the district court's upward adjustment based upon the expense created by Sinclair's influence upon the other witnesses. Although the expense of Sinclair's perjury trial related solely to that prosecution, the court explained, the expense associated with investigating and disproving the other witnesses' false testimony not only aided in the prosecution of Sinclair for conspiracy to perjure, but was also necessary in attaining a conviction in the underlying drug trial. The *Sinclair* case, therefore, actually supports the government's position in the instant appeal. Like the defendant in *Sinclair*, Grayson and Linda Tackett's sentences could be properly enhanced, pursuant to § 2J1(b)(2), to account for the costs their dishonesty forced the government to incur in prosecuting another criminal defendant. Based on the sound reasoning in *Harrington* and *Sin-*

*clair*, this panel need not address the issue of whether a § 2J1.2(b)(2) enhancement may stem solely from expenses incurred during the investigation and prosecution of the underlying charge for obstruction of justice. In this case, the defendants' sentences were enhanced, not only based upon the expenses associated with their own prosecution, but for the expense their deception forced the government to incur in its prosecution of defendants' son—an entirely separate criminal prosecution.

Putting aside the question of whether the expense necessitated by the underlying prosecution for obstruction of justice can form the basis for an upward departure, it is clear that substantial expense made necessary in the prosecution of a separate charge—whether or not such expense also aids in the eventual prosecution for obstruction—is exactly what the enhancement was designed to punish. Presumably, in passing § 2J1.2(b)(2), Congress intended to punish more harshly obstructions of justice that result in substantial expenditures in prosecuting other charges than obstructions that do not result in such expenditures.[3] Thus, if the district court properly found that Linda and Grayson's deception caused expenses necessary for the prosecution of Brian Tackett, and that this expense was "substantial," the expense properly supports a three-level enhancement. We therefore turn our discussion to whether the district court made the proper findings.

■ In enhancing a criminal sentence pursuant to § 2J1.2(b)(2), a district court should articulate certain findings regarding the substantial interference with the administration of justice. While the gov-

---

**3.** '§ 2J1.2(b)(2) increases the punishment for a defendant who obstructs justice when such obstruction has negative consequences. Such distinction regularly occurs in the criminal justice system. For example, a drunk individual who passes out while driving and veers safely off the road may be charged with driving while intoxicated; but if that same individual passes out, swerves across the highway and hits an oncoming car, killing the person inside, he may be charged with murder. In both instances the act committed by the defendant is the same, but the consequence is more severe in the second instance. The punishment is, therefore, increased. A sentence enhanced in this manner is not double-counting, but rather the natural, common-sense recognition of the consequences of a criminal's bad acts.

ernment need not particularize a specific number of hours expended by a government employee, *see United States v. Jones*, 900 F.2d 512, 522 (2d Cir.1990), the district court should specify the elements of "substantial interference." Specifically, we believe the district court must: (1) identify a particular expenditure of governmental resources (time or money), (2) which but for the defendant's conduct would not have been expended, and (3) was "substantial" in amount. *See United States v. Weissman*, 22 F.Supp.2d 187, 196 (S.D.N.Y. 1998). *See also Sinclair*, 109 F.3d at 1539–40 (discussing how substantial interference can be inferred); *United States v. Duran*, 41 F.3d 540, 546 (9th Cir.1994); *Jones*, 900 F.2d at 522.

Here, the district court found the Tacketts' fraud resulted in expenses necessary for the prosecution of Brian Tackett. This finding is, of course, one of fact, to be reviewed for clear error. *See United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994). The district court considered two types of expense made necessary by the Tacketts' duplicity: (1) the expense related to the calling of the grand jury, and (2) the expense of the ATF investigation of the veracity of the form 4473. The latter expense was clearly necessary to the prosecution of Brian Tackett for use of a firearm during the commission of a violent crime. The expenses related to convening the grand jury are more attenuated. Once the authorities had acquired Kirby's wiretaps, they had enough evidence to discredit the form 4473 and convict Brian of the gun charge. Therefore, the grand jury expense may not have been entirely necessary for the prosecution of Brian Tackett. On the other hand, the threat of a grand jury indictment might have aided the government in gaining the cooperation and testimony of Grayson at Brian's trial. Given that possibility, we cannot conclude that the district court's finding that the expense of the grand jury was related to

the prosecution of Brian Tackett was clearly erroneous.[4]

■ In deciding whether to give a § 2J1.(2)(b) enhancement, the district court must make a specific finding that the defendants' conduct resulted in the substantial expenditure of government resources. *See Tackett*, 113 F.3d at 613–14. Whether the government expenditures constituted "substantial resources" is a question of law applied to fact, which we review *de novo*. *See United States v. Wilson*, 920 F.2d 1290, 1294 (6th Cir.1990). We conclude that the district court's factual findings here were minimally sufficient to support its conclusion that the Tacketts had substantially interfered with the administration of justice.

■ The Sentencing Guidelines do not define the adjective "substantial." Several circuits have found, however, that one factual situation demarcates substantiality: "[i]n some cases, when the defendant has concealed evidence and is the only known source of information, substantial interference with the administration of justice may be inferred." *Jones*, 900 F.2d at 522. *See also United States v. Bradach*, 949 F.2d 1461, 1463 (7th Cir.1991); *Sinclair*, 109 F.3d at 1539–40. This is a logical proposition: if a person is the only source of important information, her active concealment of this information will almost certainly change the course of the proceedings, making the investigation more difficult and costly, and hampering the truth-seeking function of government agents. In order to assist district courts in determining when an interference is "substantial," we now adopt the *Jones* formulation as the rule of the Sixth Circuit. Accordingly, where a defendant actively conceals important evidence of which she is the only source, a court may infer that the defendant's interference with the administration of justice was substantial.

---

**4.** Even if the expense of the grand jury was unrelated to Brian's prosecution, the district court could have properly ruled that the expense of the ATF investigation alone constituted a substantial expense made necessary by the Tacketts' fraud.

In this case, Grayson and Linda Tackett fall within this category where substantiality can be inferred. The defendants were the only two people who knew about the falsified form, and its relationship to Brian's prosecution. They were the only source of this information. Truthful testimony from the Tacketts would have changed the course of the investigation and trial of Brian Tackett. We can infer, therefore, that the Tacketts' procurement and concealment of this fraud was a substantial interference with the administration of justice.

■ The evidence in the record corroborates this inference. After learning of the form 4473, Agent Wilt spent several days investigating its veracity. With the help of several other agents, Wilt then conducted a four-day electronic surveillance of the Tacketts, spanning a weekend. A grand jury convened to investigate the fraud. Finally, the prosecutor in Brian Tackett's case had to prepare and call Grayson Tackett and Steve Kirby to testify as to the falsity of the form 4473. This time and expense incurred by the government by the Tacketts' fraud was substantial. Several analogous cases lend support for this conclusion. *See Sinclair*, 109 F.3d at 1527 (upholding district court's determination that the government's re-interviewing and recalling of the two witnesses who had been induced to perjure themselves constituted a substantial expenditure); *United States v. Lueddeke*, 908 F.2d 230 (7th Cir.1990)(holding that the work of two officers over a period of two weeks constituted an unnecessary expenditure of substantial government resources); *United States v. Atkin*, 29 F.3d 267 (7th Cir.1994) (upholding a § 2J1.2(b)(2) enhancement because defendant's perjury caused the grand jury to summon five additional witnesses, one from as far away as Texas); *United States v. Butt*, 955 F.2d 77 (1st Cir.1992) (upholding § 2J1.2(b)(2) enhancement where but for the defendant's obstruction, the government would not have needed to locate several corroborat-

ing witnesses and might not have immunized persons whom it otherwise could have prosecuted).

While we would prefer district courts to make their factual findings as detailed as possible regarding governmental expenses, nexus to the defendant's actions, and substantiality of the evidence, we find that the district judge's findings here were minimally sufficient to support a sentencing enhancement, pursuant to § 2J1.2(b)(2), for substantial interference with the administration of justice. The decision below is, accordingly, **AFFIRMED.**