**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 17, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

RICHARD L. BISHOP,

      Defendant - Appellant.

No. 11-6166
(D.C. No. 5:10-CR-00389-R-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

While awaiting sentencing for his involvement in a drug conspiracy, Richard

Bishop modified several letters of support and recommendation originally authored by

friends and family members. Bishop pled guilty to altering documents for use in official

proceedings, *see* 18 U.S.C. § 1512(c)(1); the district court sentenced him to a below-

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R.
34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

guidelines term of 12 months imprisonment, to run consecutively with the 180-month term he received in the drug case. In this appeal, Bishop contends the district court improperly enhanced his guidelines range based on U.S.S.G § 2J1.2(b)(2), which concerns interference with the administration of justice, and U.S.S.G. § 2J1.2(b)(3), which concerns the number of documents altered. He also contends it was improper to use his drug and money-laundering convictions to enhance his criminal history and unreasonable to run his § 1512(c) sentence consecutive to the 180-month term. Finding no error, we affirm.

## BACKGROUND

Bishop accepted money in exchange for helping smuggle large quantities of ephedrine from the pharmaceutical company where he worked. The ephedrine, Bishop understood, was to be sold to methamphetamine manufacturers. As a result of his involvement, he was convicted of money laundering and conspiring to distribute methamphetamines. Seeking leniency from the sentencing judge, Bishop submitted some forty letters of support from family and friends. Unbeknownst to the judge, Bishop had altered at least 11 of the letters in a desperate attempt to bolster his case for leniency. The alterations varied in length and degree, with some limited to a sentence or two and others extending several pages. Still in the dark about the altered letters, the judge sentenced Bishop to 180 months for the drug conviction and 120 months for the money laundering conviction, the two terms to run concurrently for a total of 180 months—well below the 235 to 293-month range recommended by the guidelines.

Not long after sentencing, Bishop pled guilty to altering the letters of support. The probation office prepared a Presentence Report ("PSR") recommending a base offense level of 14, a three-point enhancement for interfering with the administration of justice under § 2J1.2(b)(2), a two-point enhancement for altering a substantial number of documents under § 2J1.2(b)(3), and a two-point reduction for acceptance of responsibility. The total offense level was 16, which (together with Bishop's criminal history category) yielded a guidelines range of 24 to 30 months. Judge David Russell settled on a 12-month term of imprisonment to run consecutively to the 180-month term Bishop was already serving.[1]

## DISCUSSION

Bishop raises four objections to his sentence: first, his sentence was improperly enhanced under § 2J1.2(b)(2) for interference with the administration of justice; second, his sentence was improperly enhanced under § 2J1.2(b)(3) based on the number of documents altered; third, his drug and money-laundering convictions were improperly used to enhance his criminal history; and fourth, running his sentence consecutive to the sentence he was already serving was unreasonable.

When evaluating the district court's calculation of the guidelines, we review legal questions de novo and factual questions for clear error, "giving due deference to the district court's application of the guidelines to the facts." *United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011).

[1] Bishop was sentenced under the 2010 edition of the United States Sentencing Commission Guidelines Manual, which we reference unless otherwise indicated.

A.     The § 2J1.2(b)(2) Enhancement

Judge Russell consulted privately with Judge Friot, the sentencing judge in Bishop's first case.  In explaining the § 2J1.2(b)(2) enhancement, Judge Russell said, "I know the judge [Friot] told me and he told the FBI that these letters affected his sentencing thinking process and so I am satisfied it did substantially interfere with the administration of justice for that very reason."  (R. 109).  Judge Friot did not testify at sentencing to the details of the conversation, which formed the sole basis for the enhancement.

Bishop's objection to the § 2J1.2(b)(2) enhancement is based on two contentions: First, the record does not support a finding that the altered letters influenced the duration of his sentences for the drug and money-laundering convictions.  In his view it is not enough that the letters affected Judge Friot's thinking; rather, for the enhancement to apply, Bishop says the letters must have actually affected the sentence.  Second, even if the record could support such a finding, Judge Russell failed to marshal the appropriate evidence at the hearing, his conclusion staked solely on the out-of-court exchange with Judge Friot.

Bishop did not raise these specific objections in the district court, and his more generalized arguments against the application of § 2J1.2(b)(2) were not sufficient to preserve the issues.  *See United States v. Smith*, 531 F.3d 1261, 1271 (10th Cir. 2008).  Our review is therefore for plain error. *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

Section 2J1.2(b)(2) provides for a three-level increase if the offense "resulted in substantial interference with the administration of justice," which includes "any judicial determination based upon perjury, false testimony, or other false evidence." Id. § 2J1.2, cmt. n.1. Bishop says the ordinary meaning of "resulted in" supports his argument that the false evidence must actually cause the intended interference. This overstates the inquiry. The question is not whether the false evidence changed the course of the proceedings but whether it *interfered* with the proceedings, with interference including any force that works against the administration of justice, even if only by frustrating the search for truth. *See United States v. Tackett*, 193 F.3d 880, 887 (6th Cir. 1999). Where the defendant is the only person who knew about the false evidence, interference can be presumed because concealing information naturally frustrates the judicial process. *See United States v. Norris*, 217 F.3d 262, 274 (5th Cir. 2000); *United States v. Jones*, 900 F.2d 512, 522 (2d Cir. 1990).

Since Bishop was the only person who knew about the altered letters, such an inference would be appropriate in this case. But even without an inference, the record supports the district court's conclusion that the altered letters substantially interfered with the sentencing proceeding. In sentencing Bishop, Judge Friot was asked to account for some forty letters of support, approximately a quarter of which had been fabricated. There can be no question, after reading the sentencing transcript, that these letters influenced Judge Friot's thinking. Not only was the ultimate sentence mild in comparison to the guidelines recommendation, but Judge Friot mentioned the letters on several occasions, noting that he "reviewed" and "sincerely appreciate[d]" them, that they

provide "insight into Mr. Bishop," and that while it may seem "that the writing of one of these letters carries with it the risk of being a futile exercise, . . . I assure you that it's not." (Appellee's App'x 56-57). Although we cannot quantify the effect of the altered letters on Judge Friot's sentence, the requisite interference stems not from the misrepresentation's consequences but rather from its very existence; it is enough that a substantial portion of the letters on which the court relied was fabricated. Even if the letters did not ultimately influence the duration of Bishop's sentence, they still frustrated the factfinding process by embellishing the case for leniency and wasting judicial resources.

Since the record provides independent support for the enhancement, we need not determine whether Judge Russell erred by failing to bring forward evidence to substantiate his exchange with Judge Friot. Under plain error review, the defendant bears the burden of demonstrating prejudice to his substantial rights. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1208 (10th Cir. 2008). Even assuming Judge Russell erred by relying on his conversation with Judge Friot, Bishop cannot succeed because the result of the proceeding would not change on remand. The conversation with Judge Friot notwithstanding, Judge Russell could have supported the enhancement by simply noting Judge Friot's remarks during Bishop's first sentencing hearing. *See United States v. Kaufman*, 546 F.3d 1242, 1252 (10th Cir. 2008) (holding that party asserting plain error must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.") (citation and internal quotation marks omitted).

B.    The § 2J1.2(b)(3) Enhancement

The guidelines require a two-point enhancement if the defendant altered a "substantial number" of documents.  U.S.S.G § 2J1.2(b)(3).  Bishop claims error because the substantial-number enhancement was applied to his offense level.  In support, he offers two arguments.  First, the word substantial admits of too many potential meanings for clear application and should be struck down as unconstitutionally vague.  Second, even if the enhancement can withstand constitutional scrutiny, it should not have been applied in this case because he did not alter a substantial number of letters.

Neither argument has merit.  To support a facial vagueness challenge, Bishop must demonstrate how the challenged provision either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Bishop's contention that the word "substantial" has no ascertainable meaning in this context is incorrect.  The enhancement would surely apply in a case where alterations tainted all or a majority of the support letters, and we suspect a person of ordinary intelligence would reach the same conclusion if the total were half or even nearly half.  Applying "substantial" becomes less clear-cut where the figure drops below the 50 percent mark, but such mathematical uncertainty is not fatal to the guideline's validity, and we have previously concluded that criminal provisions featuring the "substantial" language survive facial challenge.  *See Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1159 (10th Cir. 2006) (ordinance requiring licensing of store selling "' significant or substantial'" amount of sexually oriented merchandise was not

void for vagueness); *see also VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187-88 (2d Cir. 2010) (language of zoning ordinance defining sexually oriented business as establishment with "substantial or significant portion" of goods in adult merchandise not unconstitutionally vague); *ILQ Invs., Inc. v. City of Rochester*, 25 F.3d 1413, 1418-19 (8th Cir 1994) (holding that"' substantial or significant'" is not"' devoid of meaningful legislative standards'").

Moreover, we cannot say the sentencing court abused its discretion in concluding the number of altered documents was substantial in this case. Whether the court was considering the number as an absolute value (11), or as a percentage of total letters submitted (25%), there was nothing arbitrary or unreasonable about characterizing it as "substantial," for the quantity of false evidence was considerable under either metric.

C.     Criminal History Points

Bishop contends the sentencing judge should not have counted the drug and money-laundering convictions in calculating his criminal history because those convictions were part of the offense for altering documents and the guidelines prohibit adding criminal history points for conduct that is "not part of the instant offense." *See* U.S.S.G. § 4A1.2(a)(1). Conduct "part of the instant offense" means relevant conduct that, under § 1B1.3, could be used to determine the defendant's base offense level. *See* § 4A1.2(a)(1), cmt. n.1.

Bishop's argument has superficial appeal because the crimes were temporally close, but that has nothing to do with their relationship under § 4A1.2(a)(1). Bishop's drug and money laundering offenses played no part in the commission of this altered-

document conviction, and Bishop had been convicted of the former offenses well before engaging in the latter criminal conduct.  *See United States v. Browning*, 252 F.3d 1153, 1158-59 (10th Cir. 2001) (holding that two offenses are separate for the purposes of § 4A1.2(a)(1) where all the elements of the first offense occurred before any activity forming the basis of the second offense) (citation and internal quotation marks omitted).

D.      Consecutive Sentences

In Bishop's view, running this sentence consecutive to the earlier two sentences was harsher than necessary to satisfy the objectives set forth in 18 U.S.C. § 3553(a). In determining whether a consecutive sentence is proper, the district court is guided by the § 3553(a) sentencing factors, which include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the gravity of the crime.  *See United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1256 (10th Cir. 2006).  We generally review the imposition of consecutive sentences for abuse of discretion, *United States v. Fay*, 547 F.3d 1231, 1235 (10th Cir. 2008), and we will uphold the sentence unless it is "arbitrary, capricious, whimsical, or manifestly unreasonable," *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quotation marks omitted).

We find nothing unreasonable about the district court's decision to impose a consecutive sentence.  Having settled on a sentence below the guidelines range, the court engaged in a thorough and persuasive analysis of the § 3553(a) factors.  The factors Bishop mentions on appeal—the absence of a victim, his history of hard work, his good behavior in prison—were considered by the court and likely played a role in the court's

decision to impose a below-guidelines sentence. But the court also had to see to it that the punishment fit the crime. As the court explained, concurrent sentences would not reflect the seriousness of the instant crime because there would be no consequence for the altered-documents conviction. Such a result not only would let Bishop off the hook for a serious offense, but also would send the message to future defendants awaiting sentencing that tricking the court into imposing a more lenient sentence may be worth the gamble. As Judge Russell explained, "the public has to know . . . that you don't fool around with the judicial system, that there is a serious consequence to be paid." (R. 115).

AFFIRMED.


                         **Entered by the Court:**

                         **Terrence L. O'Brien**
                         United States Circuit Judge