936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark GORDON, Defendant-Appellant.
 No. 90-1501.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction and sentence in a cocaine case. The defendant argues, among other things, that the district court erred in various evidentiary rulings, in its instructions to the jury, and in applying the sentencing guidelines to a crime that ended before the guidelines became effective. Finding none of the defendant's arguments persuasive, we shall affirm the conviction and the sentence.
 
 
 2
 * A federal grand jury indicted defendant Mark Anthony Gordon and two others on charges of conspiracy to distribute cocaine, use of a firearm in relation to the drug offense, and engaging in a continuing criminal enterprise. The government dismissed the continuing criminal enterprise count, and the case went to trial on the other two charges.
 
 
 3
 Pursuant to an agreement with the government, a man named Tyrone Walker testified that early in 1986 he became involved with Johnny and Lonnie Williams in a scheme to transport cocaine from Miami to Detroit. Walker testified that he personally delivered cocaine in Detroit to defendant Gordon and his associates, including one Mark Nelson, on approximately five occasions, and that he thereafter arranged for Trevor and Marcus Whittiker to transport cocaine to Detroit for delivery to Gordon et al. Walker said that a total of between 225 to 275 kilograms was involved, and the last delivery was "probably" made "sometime in '87, late '87."
 
 
 4
 Walker explained that defendant Gordon broke off their business relationship because he had other sources that offered better prices. After Walker stopped supplying Gordon, however, he continued to supply Mark Nelson. Walker was finally arrested in October of 1988. The police searched his house and found records containing the telephone numbers of people in Detroit who had been involved in his drug activities. One of the telephone numbers was that of defendant Gordon.
 
 
 5
 Marcus Whittiker also testified pursuant to an agreement with the government. Whittiker explained that he had been recruited by Walker to help transport cocaine to Detroit. From late 1986 until May of 1987 he participated in the delivery of cocaine to defendant Gordon in Detroit two or three times a month.
 
 
 6
 Whittiker was arrested in May of 1987 on an interstate highway in Georgia. Twenty kilograms of cocaine were found in his car. Whittiker testified that he was on his way to Detroit at the time of his arrest, and he said that half of the cocaine he was carrying was intended for delivery to defendant Gordon's cousin. Whittiker's address book was found to contain Gordon's telephone number.
 
 
 7
 Ivan McCaskill, a third witness who testified pursuant to an agreement with the government, said that he became involved in transporting cocaine from Miami to Detroit in late 1986 through his association with Tyrone Walker. He recalled delivering drugs to defendant Gordon in Detroit approximately three times.
 
 
 8
 Jeriel Heard, a Lieutenant with the Wayne County Sheriff's Department, testified that he had been assigned to the Drug Task Force at the Detroit airport. In February of 1988, during an investigation connected with the seizure of a large amount of money at the airport, his attention was directed to a certain house on Church Street in Oak Park, Michigan. At various dates in October of 1988 and February and March of 1989 he retrieved and examined trash that had been discarded from the house. Among the items found in the trash were an insurance document bearing Gordon's name and the Church Street address; an envelope with Gordon's name and the same address; and another paper and a letter both of which likewise bore Gordon's name and the Church Street address. Also discovered in the trash were records of cocaine transactions, as Lt. Heard interpreted them, plus currency wrappers and airline flight records indicating travel to and from Miami. One of these flight records bore the name of Anthony King.
 
 
 9
 On March 14, 1989, Officer Heard testified, he had occasion to approach defendant Gordon at the Detroit airport and ask to see his airline ticket. The ticket was for a one-way flight from Miami to Detroit, and it had been issued in the name of A. King. When questioned about the use of an alias, Gordon said that his secretary had made the reservation. Gordon consented to a search of his luggage. No cocaine was found, Officer Heard testified, but the officer noticed that Gordon carried a beeper. Gordon said that he needed the beeper because he was a businessman; he declined to name the business.
 
 
 10
 The last witness to testify was David Buckley, a special agent with the Drug Enforcement Administration in Detroit. In cooperation with a confidential informant, Agent Buckley said, he called several telephone numbers that were thought to activate Gordon's beeper. Gordon returned one of the calls, but did not otherwise incriminate himself.
 
 
 11
 The jury found Gordon guilty on the cocaine conspiracy charge and not guilty on the firearm charge.
 
 
 12
 At his sentencing hearing Gordon argued that the Sentencing Guidelines should not be applied because the evidence showed that the conspiracy had ended before November of 1987, when the guidelines became effective. The district court concluded otherwise. Gordon was sentenced under the guidelines to imprisonment for 235 months and five years of supervised release.
 
 II
 
 13
 Gordon argues on appeal that portions of the testimony presented by Walker, Whittiker, and McCaskill should have been excluded as hearsay, the testimony not having been legitimized under Rule 801(d)(2)(E), Fed.R.Evid. That rule deems a statement not to be hearsay if "[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Findings that a conspiracy existed and that the defendant participated in the conspiracy are prerequisites to admission of the statements under Rule 801(d)(2)(E), Gordon argues, and the district court made no such findings. He asks this court to remand the case so that the district court can make the necessary findings, as required by United States v. Enright, 579 F.2d 980 (6th Cir.1978).
 
 
 14
 The government responds that no findings were necessary because the government did not offer any Rule 801(d)(2)(E) evidence at the trial. The government contends that all of the transcript references cited by Gordon involved statements that could come in as admissions pursuant to Rule 801(d)(2)(A) or as background statements not offered to prove the truth of the matter asserted.
 
 
 15
 Our review of the portions of the transcript cited by defendant Gordon discloses that the government is correct in its contention that some of the statements were admissible under Rule 801(d)(2)(A) as admissions made by Gordon. See United States v. Reed, 726 F.2d 570 (9th Cir.) (defendant's admissions are nonhearsay apart from the co-conspirator exception), cert. denied, 469 U.S. 871 (1984). Other statements were elicited on cross-examination by defense counsel, and a remand is not necessary as to these statements.
 
 
 16
 Four instances appear to remain. First, Tyrone Walker testified about conversations in which Johnny and Lonnie Williams invited Walker into the drug business. Second, Walker testified about a telephone conversation in which he recommended to Marcus Whittiker that Whittiker speak truthfully with FBI agents. Third, Marcus Whittiker testified that his cousin, Tyrone Walker, approached him and offered Marcus the opportunity to make a lot of money by transporting drugs from Miami to Detroit. Fourth, Ivan McCaskill testified that at the time Tyrone Walker brought him into the drug trade Tyrone told him that his role would be to make logistical and security arrangements.
 
 
 17
 This testimony is not inadmissible as hearsay. The Federal Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c). Under Rule 801(b) a "declarant" is one who makes a "statement," and words qualify as a "statement" only if they make an "assertion." Rule 801(a). A witness who testifies at trial that someone invited him into the drug trade is testifying to a verbal act of which the witness has direct knowledge: the extension of the invitation. The words allegedly spoken by the invitor do not rise to the dignity of a "statement" because they do not constitute an "assertion." Testimony that "John Doe spoke to me on Tuesday and said 'please join the drug ring' " is not hearsay because the words attributed to John Doe do not assert anything. Testimony that "John Doe spoke to me on Tuesday and told me that on Monday Richard Roe received an invitation to join the drug ring" does constitute hearsay, but that is not the type of testimony about which defendant Gordon is complaining here. Finally, Tyrone Walker's testimony that he told Marcus Whittiker to be truthful is not hearsay because the out-of-court declaration--"be truthful"--is no more an "assertion" than "please join my drug ring" would be.
 
 III
 
 18
 Gordon argues next that the district court erred in allowing introduction of the evidence obtained in the searches of trash from the Church Street house and in allowing Lt. Heard to testify that these items related to the drug trade. Gordon challenges the relevancy of this evidence and says that it prejudiced his right to a fair trial. He further contends that no foundation was laid to support the introduction of evidence of other crimes. See Rule 404(b), Fed.R.Evid.
 
 
 19
 We conclude that the district court did not err in determining that the trash evidence was relevant. Four of the items found in the trash bore Gordon's name and the Church Street address, and one bore an alias Gordon is known to have used. The evidence linked Gordon to a house evidently connected with the drug trade, and it is directly relevant to the question whether Gordon stayed in the drug business after Tyrone Walker stopped supplying him in 1987.
 
 
 20
 The probative value of the trash evidence was not outweighed by the considerations listed in Rule 403, Fed.R.Evid. Counsel for defendant Gordon thoroughly cross-examined the expert witness, and the jury had sufficient information from which to determine the weight to which the evidence might be entitled. The defendant was not unfairly prejudiced.
 
 
 21
 As to the supposed lack of a proper foundation, Rule 103(a)(1), Fed.R.Evid., restricts appellate review to situations where, unless the context made the ground for the objection apparent, there was a timely objection stating the specific ground on which the objection was based. Because Gordon's trial counsel did not advance Rule 404 as a basis for his objection to the admission of the trash evidence, the objection is not properly raised before this court. See United States v. Sandini, 803 F.2d 123, 126 (3d Cir.1986) (objection that evidence was irrelevant not sufficient to preserve consideration of Rule 404 or 403 issues where the substance of the colloquy was not sufficient to indicate that these rules were the basis of the objection), cert. denied, 479 U.S. 1093 (1987).
 
 
 22
 We conclude, moreover, that Rule 404 is not applicable here in any event. Walker testified that defendant Gordon said he had other sources from which he would obtain cocaine after he stopped doing business with Walker. The superseding indictment charged that the conspiracy existed "from on or before January 1, 1987 until the date of this indictment [Jan. 11, 1990]...." The trash evidence was used to establish Gordon's continuing involvement in the conspiracy that was charged, not as evidence of other crimes or acts, and Rule 404(b) is thus inapplicable. See United States v. Walton, 908 F.2d 1289, 1299 (6th Cir.) (Rule 404(b) inapplicable when evidence admitted to prove continued involvement in a conspiracy), cert. denied, 111 S.Ct. 273, 530, 532 (1990).
 
 IV
 
 23
 The court instructed the jury as follows with respect to Count I of the indictment:
 
 
 24
 "Let me now instruct you on the particular counts. First I will instruct you on Count One and then on Count Two. I will also read to you the laws that are involved. When you consider these laws and apply them to the facts of the case, words of common or ordinary usage are to be given their common or ordinary meaning and interpreted in a common sense fashion.
 
 
 25
 Section 846 of Title 21 of the United States Code makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 841(a)(1) of Title 21.
 
 Section 841(a)(1) reads in part:
 
 26
 'It shall be unlawful for any person, knowingly or intentionally, to possess with intent to distribute cocaine.' "
 
 
 27
 The court then went on to give detailed instructions about the establishment of a conspiracy. Although there was no contemporaneous objection, defendant Gordon now argues that the district court committed plain error because it failed to instruct the jury on the definitions of "distribution," "possession" and "intent."
 
 
 28
 This court addressed the plain error doctrine in United States v. Glover, 846 F.2d 339 (6th Cir.), cert. denied, 488 U.S. 982 (1988), where the defendant was convicted of knowingly and willfully threatening the life of the President of the United States. Although the district court instructed the jury on the elements of the offense in that case, the court did not define "knowingly" or "willfully." The defendant did not object. This court concluded that the failure to instruct the jury on these terms did not amount to plain error under Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). The court explained the plain error rule with this quotation from United States v. Hook, 781 F.2d 1166, 1172-73 (6th Cir.) (citations omitted), cert. denied, 479 U.S. 882 (1986):
 
 
 29
 "Since [defendant] failed to object to the jury instructions at trial, reversal is only required in this case if the omission of jury instructions constituted 'plain error.' The Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice. Recourse may be had to the doctrine 'only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it.' Moreover, an improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial, and an omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law." Id. at 344.
 
 
 30
 In the case at bar, we do not think that the district court's failure to provide further instructions regarding the underlying offense was reversible error. The court described the relevant statute, and the jury knew that the statute prohibited knowing or intentional possession of cocaine with intent to distribute it. We do not believe that the words "possess," "intent," and "distribute" required further explanation. The jury was instructed to use the common or ordinary meaning of this statutory language, and there is no reason to believe the jury had difficulty in doing so. This is not a case like United States v. Martinez, 496 F.2d 664 (5th Cir.), cert. denied, 419 U.S. 1051 (1974), where the district court "omitted any reference to the substantive crime of possessing with intent to distribute marijuana." Id. at 669. The reference in the case at bar was explicit and clear.
 
 V
 
 31
 Defendant Gordon asserts that the district court erred in applying the Sentencing Guidelines because, he maintains, the evidence did not establish that the conspiracy continued after November 1, 1987, the date on which the guidelines became effective. This court has held that application of the guidelines to defendants who commit continuing offenses that began before November 1, 1987, but ended after that date does not offend the ex post facto clause of the United States Constitution. Walton, 908 F.2d at 1299.
 
 The district court found as follows:
 
 32
 "The Court is persuaded that, by a preponderance of the evidence, the Defendant's involvement continued beyond October, 1987, and all that occurred was a switch in his supplier. The evidence showed that the Defendant was a major distributor of cocaine.... However, from the testimony of the changing relationship between persons who testified in the trial in October 1987[, t]he evidence in the trash bowl and subsequent observations of the Defendant, the Court finds that he did not cease his criminal activity in October 1987, but continued. Therefore, the guidelines apply."
 
 
 33
 The court's factual findings were not clearly erroneous. Tyrone Walker testified that his involvement with Gordon "had to occur at least once or twice a month until '87, through '87." He further testified that "[i]t came a point that me and Marco [Gordon] kind of broke off deals because he didn't like the price I was giving him and he said he could get better prices through other sources he had." In addition to this testimony, which suggests that Gordon's participation in the conspiracy was to continue with another supplier, the government presented evidence that could well be interpreted as linking Gordon to drug activities in 1988 and 1989.
 
 VI
 
 34
 Gordon argues, finally, that the cumulative effect of the alleged errors already discussed, coupled with errors in the indictment, in defense counsel's closing statement, in other aspects of defense counsel's representation, and in the district court's failure to have all bench conferences recorded deprived the defendant of the fundamentally fair trial to which he was entitled under the Due Process Clause of the United States Constitution. See Walker v. Engle, 703 F.2d 959 (6th Cir.) ("Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair"), cert. denied, 464 U.S. 951, 962 (1983). Having carefully reviewed these arguments, we conclude that Gordon was not denied a fundamentally fair trial.
 
 
 35
 AFFIRMED.