FILED
JUN 18, 2009
LEONARD GREEN, Clerk

File Name: 09a0427n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0427n.06

**Nos. 08-6005 & 08-6006**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| TAMMY BREWER AND HOEY | ) | STATES DISTRICT COURT FOR THE |
| DOBSON, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

**Before:** **SUTTON and GRIFFIN, Circuit Judges; LIOI, District Judge.**[*]

**SARA LIOI,** District Judge. Defendants, Tammy Brewer and Hoey Dobson, challenge their convictions and sentences growing out of an investigation into public corruption in Knott County, Kentucky. Defendants were ultimately convicted of one count each of committing perjury, in violation of 18 U.S.C. § 1623, and conspiring to commit perjury, in violation of 18 U.S.C. § 371. On appeal, both defendants challenge the admission of out-of-court statements of a coconspirator. In addition, Brewer attacks the district court's refusal to give a requested instruction. With respect to her sentence, Brewer also argues that the district court did not give proper consideration to the need to avoid unwarranted sentence disparities under 18 U.S.C. §

---

[*] The Honorable Sara Lioi, United States District Judge for the Northern District of Ohio, sitting by designation.

3553(a)(6), and erred in applying sentence enhancements under U.S.S.G. §§ 2J1.3 and 3C1.1. For the reasons detailed below, we AFFIRM.

I

In November 2007, County Judge Executive Randy Thompson was fighting for his political life. After a contentious campaign, Thompson was narrowly reelected to his seat on the bench. Following the election, however, the Federal Bureau of Investigation (FBI) began an investigation into whether Thompson and others had misappropriated county owned gravel and asphalt to private citizens in order to favorably influence the election.

On April 9, 2007, an FBI agent interviewed Brewer, who was the secretary to Judge Thompson. It is undisputed that on November 28, 2006, both Brewer and her father, Dobson, had their respective driveways paved by East Kentucky Paving. When asked about the fresh blacktop at Brewer's home, Brewer informed the agent that she had paid for the blacktop and received a receipt. In a subsequent meeting, Brewer produced the receipt to the blacktop, which was issued to Dobson. Brewer informed the agents that Dobson was a family member.

The owner of East Kentucky Paving, Randy Campbell, agreed to cooperate with authorities in exchange for immunity. Campbell had been hired by Judge Thompson to pave roads during the fall election. Campbell claimed that he had been instructed by former magistrate John Mac Combs to pave certain private driveways, and that Mac Combs had told him to issue fake receipts to hide the misappropriation of county funds. During his interviews with the FBI, Campbell admitted that the driveways of Brewer and Dobson were on the list of private driveways that had been paved with county asphalt. He further claimed that neither Brewer nor Dobson had paid for their new blacktops.

Brewer was subpoenaed to testify before the grand jury. Prior to her appearance, investigating agents advised Brewer that they had reason to believe that she had lied about paying for the services provided by Campbell's paving company. She was offered immunity in exchange for her honest testimony that she had not paid for her new blacktop, and that she was aware of other such illegal pavings. Instead, in her November 28, 2007 appearance, Brewer told the grand jury that she and her father, Dobson, had paid for their blacktops. She further testified that the receipt she had produced, bearing Dobson's name, was genuine.

On December 19, 2007, the grand jury returned a one count indictment charging Brewer with making false statements before a grand jury. Dobson was not named in the original indictment. Brewer entered a plea of not guilty on January 8, 2008.

As a result of Brewer's grand jury testimony, however, Dobson was questioned by the FBI on December 12, 2007. Dobson told investigators that he did not know who paid for the blacktop on his property. Further, while he initially stated that he had little or no knowledge as to the existence of any receipt, he later recalled that he might have placed it in a safe deposit box that he and his wife maintained.

Dobson appeared before the grand jury on December 19, 2007. He testified that he and Brewer paid for the paving services provided by Campbell's company, and that the receipt produced by Brewer was legitimate.

On January 22, 2008, the grand jury returned a three-count superseding indictment against Brewer and Dobson. Count 1 charged Brewer with knowingly making false statements to a grand jury, in violation of 18 U.S.C. § 1623. Count 2 charged Dobson with the same offense. Count 3 charged Brewer and Dobson with conspiring to give materially false statements to a grand jury, in violation of 18 U.S.C. § 371.

Brewer and Dobson were jointly tried in the district court. During the jury trial, Brewer testified that she and Dobson had received estimates from East Kentucky Paving for both driveways, and that they had paid cash for their new blacktops. She also testified that her prior grand jury testimony had been truthful. She further insisted on the stand that she was unaware of any private driveways that were paved illegally with county asphalt.

Campbell also testified at defendants' jury trial. He testified that he was informed by Judge Thompson that Mac Combs would tell him which private driveways to pave with the county's asphalt. He also told the jury that Brewer's and Dobson's driveways were among the private drives Mac Combs instructed him to pave. In addition, he testified that Mac Combs told him to produce bogus receipts to conceal the illegal pavings.

The jury returned guilty verdicts against Brewer and Dobson on both charges. The U.S. Sentencing Guidelines set the base level for violations of 18 U.S.C. § 1623 at 14. U.S.S.G. § 2J1.3. At sentencing, the district court applied a three-level enhancement for substantial interference, pursuant to U.S.S.G. § 2J1.3(b)(2), and a two level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, to Brewer's offense level. (ROA (Vol. 4) at 76-7.) This gave Brewer a new base level of 19, which carried with it a recommended range under the Sentencing Guidelines of 30-37 months. The district court ultimately sentenced Brewer to two concurrent sentences of 26 months. (ROA (Vol. 4) at 85.) With respect to Dobson, the district court determined that enhancements were not appropriate, leaving Dobson's base level undisturbed at 14. After noting that the recommended range was 15-21 months, the district court sentenced Dobson to two concurrent sentences of 15 months. (ROA (Vol. 4) at 85.)

*Statements by a Coconspirator*

Defendants contend that the district court erred in admitting part of Campbell's testimony in which Campbell recounted statements made to him by former magistrate John Mac Combs relating to the scheme to use county asphalt to pave private driveways. Defendants insist that the admission of these out-of-court statements violated their rights under the Confrontation Clause, citing *Crawford v. Washington*, 541 U.S. 36 (2004). The government responds that the statements were properly admitted as non-hearsay, and that, in any event, they could have been admitted under the coconspirator exception to the hearsay rule set forth in Fed. R. Evid. 801(d)(2)(E).

"In reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions." *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (quoting *United States v. Salgado*, 250 F.3d 438, 451 (6th Cir. 2001)) (internal citation omitted). A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Baker*, 458 F.3d 513, 516 (6th Cir. 2006); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (citing *GE. v. Joiner*, 522 U.S. 136, 142 (1997)). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997).

At trial, Campbell testified that Mac Combs told him which private driveways to pave, and that Mac Combs instructed him to pave Dobson's and Brewer's driveway.[1] He also testified

---

[1] Specifically, Campbell was asked: "Did someone—you said Mac Combs told you where to pave?" Campbell answered;

that Mac Combs asked him to prepare fake receipts for the work done on the private driveways, and advised Campbell that he (Mac Combs) would file the bogus receipts in the courthouse.[2]

Prior to Campbell taking the stand, Brewer filed a motion in limine to limit Campbell's testimony to exclude all reference to any out-of-court statements made by Mac Combs. Specifically, Brewer sought to prevent Campbell from testifying that Mac Combs told him which private drives to pave, and further told him to issue bogus receipts to cover up the misappropriation of county resources. The district court denied the motion, finding that the out-of-court statements were not hearsay because they were not being offered for the truth of the matters asserted. (ROA (Vol. 5) at 57.) In so ruling, the district judge emphasized that the testimony was being offered to show "the reason the witness [Campbell] acted in a particular way." (*Id.* at 58.)

"Hearsay" is defined by the Federal Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

---

"Yeah." (ROA (Vol. 6) at 12.) Later, Campbell was asked who instructed him to pave Dobson's driveway. Campbell answered: "Mac Combs." (ROA (Vol. 6) at 28.) As to Brewer's drive, Campbell was asked: "Who directed you to [lay blacktop]?" Again, Campbell responded: "Mac Combs." (ROA (Vol. 6) at 29.)

With respect to the bogus receipts, the testimony unfolded as such:

Q. […] After you paved these driveways, did anyone ask you to prepare receipts—

A. Yes.

Q. –that made it appear to be private blacktop?

A. Yes.

Q. Who asked you to do this?

A. Mac Combs.

Q. And what were the circumstances of—tell us how that happened?

A. He said that he needed some receipts made out, and he told me who to put on them, and he said he was going to file them in the courthouse.

(ROA (Vol. 6) at 33-4.)

truth of the matter asserted." Fed. R. Evid. 801(c). A "declarant" is one who makes a "statement," and words constitute a "statement" only if they qualify as an "assertion." Fed. R. Evid. 801(b), (a). "A 'witness who testifies at trial that [someone solicited them to commit a crime] is testifying to a verbal act of which the witness has direct knowledge: the extension of the invitation.'" *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (quoting *United States v. Gordon*, No. 90-1501, 1991 U.S. App. LEXIS 13720, *3 (6th Cir. June 20, 1991)).

In *Childs*, the disputed testimony involved a witness's representations on the stand that the defendant's coconspirator had asked the witness if she knew of anyone who could kill someone for her. *Childs,* 539 F.3d at 558. The court ruled that the statement was not an assertion, and, therefore, not hearsay. In so ruling, the court observed that the witness was merely testifying to a verbal act, noting that it was "the fact that the declaration was made, and not the truth of the declaration, which is relevant." *Id*. at 559.

Similarly, Campbell's testimony regarding his conversations with Mac Combs was properly admitted as non-hearsay verbal acts. The statements of Mac Combs, recounted on the stand by Campbell, were not assertions; rather, they represented solicitations on the part of Mac Combs to commit a series of crimes involving the misappropriation of public resources. As the district court properly observed, the testimony was offered for the sole purpose of putting into context Campbell's response of paving the private driveways and generating bogus receipts. Consequently, the statements were properly admitted as non-hearsay.[3] *See e.g., United States v. Rodriguez-Lopez,* 565 F.3d 312, *4-*5 (6th Cir. 2009) (phone calls made to a drug dealer's cell phone by individuals "requesting heroin" while the dealer was being detained by police were

---

[3] Brewer attempts to distinguish *Childs* on the ground that Campbell's testimony related to on-going criminal activity while the disputed testimony in *Childs* involved an initial invitation to commit a crime. Brewer fails to cite any authority, however, that would suggest that the point in the conspiracy in which the verbal act occurred dictates whether the statement can be considered non-hearsay.

improperly excluded as hearsay because "the government [did] not offer them for their truth. Indeed, if the statements were questions or commands, they could not—absent some indication that the statements were actually code for something else—be offered for their truth because they would not be assertive speech at all. They would not assert a proposition that could be true or false."); *United States v. Zenni*, 492 F. Supp. 464, 469 (E.D. Ky. 1980) (The content of phone calls made to defendant's home while police were conducting a search by gamblers wishing to place bets were properly admissible as nonassertive verbal acts because they were offered to show the callers' belief that they could place illegal bets with defendant.)

Even if the statements could have been considered hearsay, their admission would have been appropriate under the coconspirator exception to the hearsay rule. Rule 801(d)(2)(E) provides that a statement made by a coconspirator is admissible as non-hearsay "if [t]he statement is offered against a party and is […] a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy." *United States v. Carter*, 14 F.3d 1150, 1155 (6th Cir. 1994). A coconspirator's statements will fall into this category if the statements prompt another to "act in a matter that facilitates the carrying out of the conspiracy, or that serve as a necessary part of the conspiracy by concealing or impeding the investigation […]." *United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005). *See United States v. Godinez*, 110 F.3d 448, 454 (7th Cir. 1997) (quoting *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir. 1989)) (A statement by a coconspirator "satisfies the 'in furtherance' element of Rule 801(d)(2)(E) when the statement is 'part of the information flow between conspirators intended to help each perform his role.'")

It was the government's theory that defendants were involved in a conspiracy with Judge Thompson, Mac Combs, Campbell and others to misappropriate county resources for personal use. Mac Combs' verbal directions to Campbell as to which driveways to pave and how to cover up the illegal pavings with fake receipts were clearly offered to assist Campbell in performing his role in that conspiracy. *See Godinez*, 110 F.3d at 454. Mac Combs's out-of-court statements, if they were, indeed, offered for the truth asserted therein, would fall neatly into the coconspirator exception to the hearsay rule. *See United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005). Ample evidence, moreover, shows that Brewer was part of the conspiracy—as she both benefited from it and helped to cover it up.

Defendants argue, however, that the admission of these statements violated their rights under the Confrontation Clause. In *Crawford*, the Supreme Court ruled that "[w]here testimonial evidence is at issue, [...,] the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68. *See also United States v. Martinez*, 430 F.3d at 328-29. However, only statements that are testimonial in nature invoke the protection of the Sixth Amendment's Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51). The threshold question is, therefore, whether the contested statements were testimonial. Statements by coconspirators made to further the conspiracy are not testimonial. "By definition, such statements are not by their nature testimonial [...]." *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007). Here, Mac Combs clearly made his statements to assist Campbell in carrying out his duties in the conspiracy. Mac Combs's out-of-court statements, therefore, were nontestimonial in nature, and fell outside the protection of the Confrontation Clause.

Further, even if the district court erred in admitting the statements into evidence, any such error was harmless under the standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967), for review of constitutional errors. *Chapman* requires the "beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 384 U.S. at 24. Given the compelling testimony of Campbell that he used county asphalt to pave defendants' driveways and that neither Dobson nor Brewer paid for this service, the Court concludes that the admission of the out-of-court assertions was harmless beyond a reasonable doubt.

*Request for Jury Instruction on Good Faith*

Brewer also complains that the district court erred in refusing to instruct the jury that there is a presumption in the law that contracts are entered into in good faith. We review the denial of a proposed jury instruction for abuse of discretion. *United States v. Frost*, 914 F.2d 756, 766 (6th Cir. 1990).

"The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984). *See United States v. Dedman*, 527 F.3d 577, 600 (6th Cir. 2008); *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000). It is not error for a trial judge to refuse to give a certain charge, or fail to use language suggested by a party, if the instruction, as given, is sufficient and accurate. *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). "A district court's refusal to deliver a requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to

give it substantially impairs the defendant's defense." *Id.* *See United States v. Ricketts,* 317 F.3d 540, 544 (6th Cir. 2003); *Prince*, 214 F.3d at 761.

Brewer requested the following instruction:

Proposed Instruction # 4

In this case you have heard testimony that the defendants properly contracted with Randy Campbell through his paving company, known as East Kentucky Paving, to pave their respective driveways. Further, a receipt has been introduced into evidence showing payment of $1,850.00 to East Kentucky Paving as payment for said blacktopping. There is a presumption in the law I must make you aware of, that is, sales and contracts are presumed to have been made in good faith until the contrary is proven. This of course is all for you to decide.

(Record Entry No. 52 at 3.)

Brewer argues that the district court abused its discretion in refusing to give the instruction because the requested charge was an accurate account of Kentucky contract law, the defense's theory that Brewer and Dobson acted in "good faith" when they contracted with Campbell was not otherwise addressed in the district court's charge, and that this "good faith" was central to Brewer's defense. The government maintains that the requested instruction was redundant, in that the concept of "good faith" was adequately covered by the district court's instructions on the presumption of innocence.

With respect to the charge under § 1623, the district court instructed the jury that:

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:
First, that the defendant made a statement, as alleged in the indictment, while she was under oath before the grand jury;
Second, that such statement was false in one or more of the respects charged;
Third, that the defendant knew such statement was false when she made it, and
Fourth, that the false statement was material to the grand jury inquiry.

(ROA (Vol. 1) at 88.) This instruction accurately set forth the elements of perjury under 18 U.S.C. § 1623. *See United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007) (internal citation

omitted) (To convict an individual under §1623, "the government must prove beyond a reasonable doubt that the defendant '(1) knowingly made; (2) a *materially* false declaration; (3) under oath; (4) in a proceeding before or ancillary to any court of the United States.'") (emphasis in original). The district court also thoroughly and properly instructed the jury that Brewer and Dobson enjoyed a presumption of innocence, noting, in particular, that "the defendants start the trial with a clean slate, with no evidence at all against them, and the law presumes that they are innocent. This presumption of innocence stays with them unless the government presents evidence here in court that overcomes the presumption, and convinces you beyond a reasonable doubt that they are guilty." (ROA (Vol. 1) at 78.)

The district court's instruction fairly and accurately reflected the law as it applied to § 1623. Moreover, the idea that there is a presumption that contracts are entered into in good faith, regardless of the accuracy of this general contract principle, was substantially covered by the trial court's instruction that the government bore the burden of proof and that Brewer was entitled to a presumption of innocence. Regardless of the civil law governing the making of contracts, Brewer's jurors were instructed that they were to begin with the presumption that Brewer did not offer materially false testimony. Since it was Brewer's position that she had testified truthfully before the grand jury that she had paid for the blacktop, the instruction on the presumption of innocence alerted the jury to start with the presumption that *her* contract was entered into in good faith in that she intended to, and did, pay for the services provided. Inasmuch as Brewer's requested instruction was substantially covered by the district court's charge, this Court cannot find that the district judge abused his discretion.

Even if Brewer's requested charge regarding contract law could be viewed as going directly to her theory of defense, the failure to instruct on "good faith" would have been

harmless. "It is error to fail to instruct on the defendant's theory of the case, however '[t]he trial judge [is] not required to adopt the language suggested by a defendant […].'" *United States v. McGuire*, 744 F.2d 1197, 1201 (6th Cir. 1984) (quoting *United States v. Garner*, 529 F.2d 962, 970 (6th Cir.), cert. denied, 429 U.S. 850 (1976)). Moreover, even if an instruction on a defendant's theory of the case is improperly rejected, a resulting conviction will still be upheld "when the court is convinced that the jury would have convicted the defendant even if it had been properly instructed." *United States v. Nash*, 175 F.3d 429, 437 (6th Cir. 1999) (citing *United States v. Mauldin*, 109 F.3d 1159, 1161 (6th Cir. 1997)).

It was Brewer's defense theory that she did pay for the blacktop, and therefore, her subsequent grand jury testimony swearing to the same was truthful. Any failure to specifically instruct on this theory was harmless. The issue of Brewer's "good faith" was clearly placed before the jury, even if the exact words were not used. By instructing on the burden of proof and the presumption of innocence, the district court informed the jury of Brewer's theory of the case, and properly placed the burden of proof on the government. *See e.g., Nash*, 175 F.3d at 437 (the district court's error in failing to instruct on "good faith" in a trial involving the offense of willfully failing to file, and filing false, income tax returns was harmless where the district court clearly instructed the jury that it had to find that defendant knew that his claims were false when he submitted them to the IRS); *McGuire*, 744 F.2d at 1201-2 (failure to instruct on defendant's "good faith" defense was harmless where the district court instructed the jury with regard to specific intent). An additional instruction on "good faith" would not have changed the outcome at trial. Any error in failing to give an additional instruction on "good faith," therefore, was harmless.

*Sentencing Issues*

**13**

Brewer also raises three separate issues relating to her sentencing. In the landmark case of *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that the U.S. Sentencing Guidelines were advisory. As such, post-*Booker,* district courts are now vested with enhanced discretion when sentencing criminal defendants. *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). Still, it remains the duty of the district court to ensure that the sentences it imposes are "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a), and it is our duty to determine that a sentence is reasonable. *United States v. Davis*, 458 F.3d 505, 509-510 (6th Cir. 2006). "Reasonableness" has both a procedural and substantive component. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). "A sentence may be procedurally unreasonable if 'the district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). In the Sixth Circuit, a rebuttable presumption of substantive reasonableness attaches to a sentence that falls within the Sentencing Guidelines recommended range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

Under § 3553(a), the district court should consider the seriousness of the offense, deterrence of future crimes, protection of the public from future crimes of the defendant, and the need to provide the defendant with training or correctional treatment. *Id.* (citing § 3553(a)(2)). The district judge should also consider circumstances unique to the defendant, the various sentences available, the range recommended by the Sentencing Guidelines, policy statements set forth in the Guidelines, the appropriateness of restitution, and the need to avoid disparate sentences. *United States v. Collington*, 461 F.3d 805, 807 n. 1 (6th Cir. 2006) (citing §

3553(a)(1), (3)-(7)). A district court's sentence is reviewed for reasonableness with an eye toward those same § 3553(a) factors. *Jackson*, 408 F.3d at 304.

A review of the sentencing transcript reveals that the district court properly set forth his responsibilities under § 3553(a), and carefully considered each factor in crafting defendants' sentences. Brewer complains, however, that the district judge failed to properly consider the need to avoid disparate sentences under § 3553(a)(6).

*Avoiding Disparities under § 3553(a)(6)*

At sentencing, Brewer's counsel moved to require the government to produce discovery on the number of individuals who were implicated in the Knott County corruption investigation but received immunity. (ROA (Vol. 6) at 5.) Defense counsel argued that, under § 3553(a)(6), the district judge needed to know the number of people who had been granted immunity, and the nature and extent of their involvement in the public corruption, to avoid unwarranted sentence disparities. (ROA (Vol. 6) at 9-12.) After acknowledging that it would take notice of the fact that the government had chosen to offer immunity to certain individuals who had engaged in the same type of behavior as defendants, the district court denied the motion to require discovery. (ROA (Vol. 6) at 12, 18.)

Brewer's argument that § 3553(a)(6) entitled her to information on the number of people granted immunity fails for several reasons. First, Brewer's request for discovery of those offered immunity fell outside of the boundaries of § 3553(a)(6). Specifically, that section provides:

> The court, in determining the particular sentence to be imposed, shall consider—
> ***
> The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct […].

18 U.S.C. § 3553(a)(6). It is clear that § 3553(a)(6) limits its reach to consideration of (1) defendants, (2) who have convictions, and (3), therefore, have been adjudged guilty. Those who

accepted the government's offer of immunity avoided conviction, and, therefore, were never found guilty. Thus, the plain and ordinary meaning of the language of § 3553(a)(6) precludes a finding that the district court erred in denying Brewer's motion. *See generally United States v. Davis*, 360 F.3d 901, 903 (8th Cir. 2004) ("Absent a special definition of the particular term at issue, we give Guideline language its ordinary meaning.")

Second, § 3553(a)(6) "is concerned with national disparities among the many defendants with similar backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). *See United States v. Rochon*, No. 07-5429, 2009 WL 792893, *3 (6th Cir. Mar. 27, 2009) (quoting *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008)) ("[W]hile a district court in its discretion may consider local disparities to be relevant, the need to avoid sentencing disparities under Section 3553(a)(6) concerns 'national disparities,' not disparities between specific cases.") It does not focus on perceived disparities between any two defendants, even if those defendants happen to be co-defendants implicated in the same criminal activity.[4] *Id*.; *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991). "Instead, § 3553(a)(6) is there to ensure nationally uniform sentences among like offenders so as to leave room to depart downward for those defendants who are truly deserving of leniency." *Simmons*, 501 F.3d at 624. Generally, "national uniformity is taken into account by the Sentencing Guidelines which 'are almost certainly the best indication of ordinary practice since most sentences are

---

[4] A district court may, but is not required to, consider a sentence in light of a sentence received by a co-defendant. *Walls*, 546 F.3d at 737, n. 3; *Simmons*, 501 F.3d at 623-24.

within the guidelines.'"[5]  *Id*. at 626 (quoting *United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006)).

Here, the district judge found that there were no other defendants who had been found guilty of similar offenses who had been guilty of perjury from which a disparity analysis could be made.  (ROA (Vol. 6) at 82.)  Instead, the district court turned to the U.S. Sentencing Guidelines to ensure that the sentences it was about to impose were not disparate to sentences handed out for similar crimes.  After considering the recommended Guidelines range, as well as all of the § 3553(a) factors, including the seriousness of the offense, the district court imposed a sentence that was actually below the adjusted base level recommended range.  Such a sentence carries with it a rebuttable presumption of reasonableness.  *United States v. Cage*, 458 F.3d 537, 543 (6th Cir. 2006).  *See Fernandez*, 443 F.3d at 20 ("We recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances.")  Brewer has failed to come forward with anything that would call into question this reasonableness presumption.

Even assuming *arguendo* that a consideration of those who had been afforded immunity in the Knott County scandal was relevant and necessary to Brewer's sentencing, it is clear from the record that any failure by the district court to require the government to produce discovery on the subject was harmless.  While the district court did not know the exact number of individuals who were granted immunity, it was aware that the government had granted immunity to others who might otherwise have been considered "defendants" under § 3553(a)(6).  Further, the

---

[5]

In addition, § 3553(a)(6) counsels against *unwarranted* sentence disparities. § 3553(a)(6) (emphasis added). Behavioral differences and differences in individual characteristics between defendants are valid bases for considering dissimilar sentences. *See United States v. Fernandez*, 443 F.3d 19, 25 (2d Cir. 2006).  In this case, the fact that others cooperated with the government, whereas Brewer chose not to and, instead, decided to offer perjured testimony, is an appropriate distinction to be made at sentencing.  *See e.g., United States v. Stone*, 244 F. App'x 720, 724 (6th Cir. 2007).

district court stated for the record that it did take the grants of immunity into consideration in sentencing Brewer.[6]  As such, it cannot be said that the failure to disclose the number of individuals granted immunity jeopardized the reasonableness of the sentence Brewer received.

*Two-Level Enhancement Under § 3C1.1*

Brewer also challenges the district court's imposition of a two-level enhancement for obstruction of justice. Section § 3C1.1 provides, in part:

> If […] the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentence of the instance offense, […] increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  "One type of obstructive conduct specifically mentioned in the Guidelines is perjury."  *United States v. Logan*, 250 F.3d 350, 374 (6th Cir. 2001).  This Court employs a clearly erroneous standard to a district court's factual determinations, while the decision that certain conduct constitutes obstruction and its application of the enhancement are reviewed *de novo*.[7]  *United States v. Baggett*, 342 F.3d 536, 540-41 (6th Cir. 2003); *United States v. Chance*,

---

[6]

At sentencing, the district judge explained its reason for considering the grants of immunity:

> I think the Government has provided some information for the record, and, Mr. Coffey, you've made a case for the record that I think it is fair for me to consider in terms of the overall considerations under 3553 that I'm going to consider.  By denying your motion to disclose, which I'm going to do, it's simply a recognition that the specificity that you are seeking is not necessary to these proceedings.  But that's different than saying that I won't consider your general argument as it relates to this notion of disparity.  I think it's fair to consider it.  I'm not sure I'd give it much weight.  But I'm not suggesting that that's not an argument that's not appropriate to be made, and will certainly recognize it and consider it more broadly as it relates to the arguments that you're setting forth on behalf of your client.

(ROA (Vol. 6) at 18-19.)

The government advocates for a plain error review of the district court's imposition of the enhancement for obstruction of justice, arguing that Brewer failed to offer any objections to the sentence when it was imposed.  The Court need not decide whether this more stringent standard is appropriate because it is clear that under any standard, the district court did not err in imposing the enhancement.

**18**

306 F.3d 356, 389 (6ᵗʰ Cir. 2002)*. See United States v. Walker*, 119 F.3d 403, 405 (6ᵗʰ Cir. 1997).

In this case, the district judge found that the enhancement for obstruction of justice was appropriate because Brewer was untruthful at trial, and that "the untruthful testimony on material matters was designed to substantially affect the outcome of the case." (ROA (Vol. 6) at 62.) Of course, the district court may not rely solely on the jury's guilty verdict on the perjury charge. *Chance*, 306 F.3d at 389-90. "Rather, in order to impose an obstruction of justice enhancement for perjury, the trial court must find that the defendant committed perjury within the meaning of 18 U.S.C. § 1621, that is, that the defendant testified falsely 'concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

The Sixth Circuit has interpreted the decision in *Dunnigan* as placing two requirements upon a district court before it may impose an enhancement for obstruction of justice. First, the district court must identify the particular testimony it finds to be perjurious. *Chance*, 306 F.3d at 390; *United States v. Mise,* 240 F.3d 527, 531 (6ᵗʰ Cir. 2001). Second, the district judge must make specific findings as to every element of perjury or make a finding that "encompasses all of the factual predicates for a finding of perjury." *Mise*, 240 F.3d at 531 (internal citation omitted). *See United States v. Johns*, 324 F.3d 94, 97 (2ⁿᵈ Cir. 2003). With respect to the first requirement, the district court may rely on a detailed list of perjurious statements supplied by the government. *Chance*, 406 F.3d at 390; *United States v. Sassanelli*, 118 F.3d 495, 500 (6ᵗʰ Cir. 1997).

In this case, the district court indicated that it was relying on the testimony set forth in the Presentence Report (PSR) to satisfy its obligation to identify particular testimony that it found to

be perjurious. (ROA (Vol. 6) at 62.) In doing so, the judge observed that there were no objections to the PSR as offering an accurate account of the testimony Brewer gave at trial. (*Id.*)

Where a defendant's PSR contains mere conclusory assertions as to a defendant's obstruction of justice, adoption of the PSR by the district court will not satisfy the *Dunnigan* requirement that specific instances of perjury be set forth with particularity. *Johns*, 324 F.3d at 97. However, when the PSR "sets forth reasonably detailed findings in support of its conclusions" as to obstruction of justice, reliance on such a document will satisfy the particularity requirement of *Dunnigan*. *Id* at 98.

In the present case, the PSR sets forth with detail the portions of Brewer's trial testimony believed to have been perjurious. This includes Brewer's testimony that she paid cash for the blacktop, that she was unaware of any driveways that were illegally paved with county asphalt, and that her prior grand jury testimony indicating the same had been truthful. (ROA (PSR) at 10-14.) The level of detail provided in the PSR, which the district court adopted at sentencing, was amply sufficient to satisfy the first prong of the *Dunnigan* test. *See e.g., United States v. Johns*, 324 F.3d 94, 98 (2nd Cir. 2003) (the particularized findings in the PSR supported the trial court's factual findings as to obstruction of justice); *United States v. Oxendine*, 36 F. App'x 511, 511-12 (4th Cir. 2002) (the district court's adoption of the factual findings in the PSR was sufficient to satisfy its obligation to make specific findings as to obstruction of justice).

The district court also had at its disposal its own recollections as to Brewer's obstructive conduct, as well as the trial testimony of Campbell, which clearly contradicted that offered by Brewer on the issues material to the obstruction of justice inquiry. Coupled with the detailed findings in the PSR, it cannot be said that the district court erred in making its determination that Brewer obstructed justice within the meaning of § 3C1.1. *See e.g., Logan*, 250 F.3d at 376 (trial

court properly relied upon the detailed PSR and its own recollections of the trial to satisfy the particularized findings requirement of *Dunnigan*).

As for the second requirement, the district court started with the elements of perjury and made a specific finding that "Ms. Brewer was untruthful at trial of this matter with respect to material matters in this case, and that the untruthful testimony on material matters was designed to substantially affect the outcome of the case."[8] (ROA (PSR) at 60, 62.) Further, the district court observed that the perjurious testimony that formed the basis for Brewer's conviction for knowingly making false, material declarations to a grand jury was repeated on the stand in her criminal trial. (ROA (PSR) at 63.) Having made findings that supported the factual predicates for the crime of perjury, the district court properly discharged its duties to support its imposition of a two level enhancement for obstruction of justice.[9] *See Johns*, 324 F.3d at 98; *Mise*, 240 F.3d at 531.

*Three-Level Enhancement Under § 2J1.3*

In her final assignment of error, Brewer takes issue with the district court's imposition of a further sentencing enhancement for causing substantial interference with the administration of justice. As previously observed, factual findings supporting sentencing enhancements are

---

[8] This determination encapsulates the elements of a violation of 18 U.S.C. § 1623, which include: that the defendant "(1) knowingly made; (2) a materially false declaration; (3) under oath; (4) in a proceeding before or ancillary to any court of the United States." *United States v. Lee*, 359 F.3d 412, 419 (6th Cir. 2004). *See Safa*, 484 F.3d at 821.

[9] In imposing the enhancement under § 3C1.1, the district court also observed that Application Note 7 to § 3C1.1 cautions that "this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense)." Relying on the decision in *United States v. McCoy*, 316 F.3d 287 (D.D.C. 2003), the district court properly concluded that the exception to Application Note 7 applied in situations, such as this, where a defendant took the stand in a perjury trial. (ROA (Vol. 6) at 61). *See McCoy*, 316 F.3d at 289 ("Lying under oath to protect oneself from punishment for lying under oath seems to us--and to the Supreme Court--to be precisely the sort of significant further obstruction to which Note 7 refers.")

reviewed for clear error, while the application of the Sentencing Guidelines to the facts is reviewed *de novo*. *United States v. Tackett*, 193 F.3d 880, 884 (6th Cir. 1999).

Section § 2J1.3 provides:

> If the perjury, subornation of perjury, or witness bribery resulted in substantial interference with the administration of justice, increase by 3 levels.

18 U.S.C. § 2J1.3(b)(2). Application Note 1 explains that substantial interference with the administration of justice "includes a premature termination of a felony investigation; an indictment, verdict, or any judicial determination based on perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.3, Application Note 1. It is the "unnecessary expenditure of substantial governmental or court resources" that is the focus of this final assignment of error.[10]

In advocating for an enhancement for unnecessary expenditure of substantial governmental resources, the government may not rely on any investigative costs incurred prior to the defendant's perjury. *United States v. Johnson*, 485 F.3d 1264, 1271 (11th Cir. 2007). Nonetheless, "'[t]he government need not particularize a specific number of hours expended by government employees' to sustain the application of section 2J1.3(b)(2)'s enhancement." *United States v. Norris*, 217 F.3d 262, 273 (5th Cir. 2000) (quoting *United States v. Jones*, 900 F.2d 512, 522 (2d Cir. 1992)). *See Johnson*, 485 F.3d at 1271.

Here, the district court applied the enhancement under § 2J1.3 to Brewer's sentence upon a determination that, as a result of Brewer's perjured grand jury testimony, the government was required to expend additional, unnecessary, and substantial resources to investigate Dobson and bring him before the grand jury. (ROA (Vol. 6) at 65-6.) Brewer argues that the district court

---

[10]

"Whether the government expenditures constituted 'substantial resources' is a question of law applied to fact, which we review *de novo*." *Tackett*, 193 F.3d at 887.

erred in imposing the enhancement because it failed to identify "with specificity" what resources were spent as a result of Brewer's testimony, and because any resources expended by the government in investigating Dobson were not the result of Brewer's perjured testimony.[11] Neither argument has merit.

It is undisputed that Dobson was not interviewed prior to Brewer's grand jury testimony, even though his driveway had been paved the same day as Brewer's and his name appeared on the bogus receipt produced by Brewer. Instead, he was interviewed immediately after Brewer gave her perjured grand jury testimony. Brewer's dishonesty put into motion a series of events that included a subsequent grand jury appearance by Dobson, and the issuance of a superseding indictment naming Dobson as a coconspirator. The Court cannot find that the district court clearly erred in determining that Brewer's misconduct resulted in the expenditure of governmental resources. *See e.g. Tackett,*[12] 193 F.3d at 886-87 (defendants' dishonesty in attempting to obstruct their son's arson trial resulted in the expenditure of government resources to charge the son with the additional offense of obstruction). Nor can the Court find that the district judge's determination that the time and expense necessary to investigate, charge, and prosecute Dobson were substantial was erroneous. *See e.g., Johnson*, 485 F.3d at 1272

---

[11]

Specifically, Brewer argues:

> This case was part of an investigation of many persons in Knott County who received blacktop from Randy Campbell and other pavers. Detective Hopkins indicated to Tammy Brewer during his initial interview that he was talking to everyone who had allegedly received blacktop from Randy Campbell during this period. Further, Detective Hopkins testified many individuals testified before the grand jury who had received improper benefits from the Knott County officials. Even if Brewer had testified consistent with the government's theory of the case that she and Dobson did not pay for the paving and received a fake receipt, Dobson, just like everyone else, implicated in the investigation would have been interrogated and brought before the grand jury.

(Appellant's Brief at 29.)

[12]

*Tackett* actually involved a sentence enhancement under U.S.S.G. § 2J1.2(b)(2) that also provided for a similar three-level enhancement if the offense resulted in "substantial interference with the administration of justice."

(defendant's false grand jury testimony in Clean Water Act action resulted in substantial resources expended to interview additional witnesses and reconvene the grand jury).

Accordingly, we find that the district court did not err in imposing a three-level enhancement under § 2J1.3.

III

For all of the forgoing reasons, the judgment and sentence of both Brewer and Dobson are AFFIRMED.